IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 2, 2001 Session

**STATE OF TENNESSEE  v.  CURTIS JASON ELY**

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Anderson County**
**No. 96CR0484B      Hon. James B. Scott, Judge**

---

**No. E1998-00099-SC-R11-CD - Filed June 5, 2001**

---

<u>AND</u>

**STATE OF TENNESSEE  v.  LACONIA LAMAR BOWERS**

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 61221      Hon. Richard R. Baumgartner, Judge**

---

**No. E1999-00170-SC-R11-CD - Filed June 5, 2001**

---

This is a consolidated appeal from the defendants' convictions in the Criminal Courts of Anderson County and Knox County, respectively.  Defendant Ely was originally charged with one count of premeditated murder and one count of felony murder; defendant Bowers was charged with two counts of felony murder.  In Ely's case, the State nolle prossed the premeditated murder count upon the conclusion of the proof, and the trial court refused to instruct any lesser-included offenses to felony murder.  He was convicted as charged of felony murder and sentenced to life imprisonment. In defendant Bowers's case, the trial court dismissed the charges of felony murder at the conclusion of the proof and, over his objection, instructed the jury on the lesser offenses of second degree murder, reckless homicide, and criminally negligent homicide.  Bowers was convicted of second degree murder.

On appeal to the Court of Criminal Appeals, Ely argued that the offenses of second degree murder, reckless homicide, criminally negligent homicide, facilitation of felony murder, and accessory after the fact to felony murder were all lesser-included offenses of felony murder and should have been instructed.  A majority of the intermediate court held that accessory after the fact was not a lesser-included offense of felony murder.  However, assuming that the other lesser offenses were included, the Court of Criminal Appeals determined that no error occurred because the evidence did not

support an inference of guilt of any of the other lesser offenses. In his direct appeal, Bowers argued that second degree murder was not a lesser-included offense of felony murder and should not have been charged. The intermediate court held that second degree murder was a lesser-included offense of felony murder and that it was properly instructed in his case.

We granted review in this consolidated appeal to determine several issues: (1) whether there are any lesser-included offenses to felony murder; (2) if there are no lesser-included offenses, whether the conviction in Bowers's case is therefore invalid; (3) if there are lesser-included offenses, whether failure to instruct such offenses was error in Ely's case; and (4) whether any such error was harmless. We also take the opportunity in this case to clarify the harmless error standard, which has been the subject of some confusion since our decision in State v. Williams, 977 S.W.2d 101, 104-06 (Tenn. 1998). We conclude that the offenses of second degree murder, reckless homicide, and criminally negligent homicide are lesser-included offenses of felony murder, and therefore, instruction on these offenses in Bowers's case was not error. In Ely's case, we find that some evidence exists that reasonable minds could accept as to several lesser-included offenses, and therefore, the failure to instruct such offenses was error. Because we conclude that such error was not harmless beyond a reasonable doubt, we reverse Ely's conviction and remand his case for a new trial.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the
Court of Criminal Appeals Affirmed in Part, Reversed in Part in Ely's case, and
Affirmed in Bowers's case.**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

J. Thomas Marshall, Clinton, Tennessee, for the appellant, Curtis Jason Ely.

William C. Talman, Knoxville, Tennessee, for the appellant, Laconia Lamar Bowers.

Michael E. Moore, Solicitor General, and Gordon W. Smith, Associate Solicitor General, Nashville, Tennessee, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

These cases were granted review to settle three issues: first, whether there are any lesser-included offenses to felony murder under the test adopted in State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999); second, if certain offenses are deemed lesser-included in a charge of felony murder and the evidence at trial supports a charge on such offenses, whether failure to so instruct is subject to a harmless error analysis; and third, whether failure to instruct on lesser-included offenses is an error of constitutional dimension so as to apply a "beyond a reasonable doubt" standard when

performing a harmless error analysis.  A summary of the facts in these respective cases is relevant to put these issues in proper context.

## *STATE v. ELY*

During the early morning hours of December 3, 1996, intruders broke into the home of seventy-year-old William Bond and repeatedly struck him over the head with a brick, killing him. The intruders took several pieces of electronic equipment from Bond's home, including two televisions, a VCR, and a compact disc player.  Within a few days, the victim's former step-grandson, Trinidy Carden,[1] was linked to the crime when he attempted to dispose of some of the victim's property.  When Carden was brought in for questioning, he confessed to the crimes and implicated the defendant as the person who had actually killed the victim.

At trial, Carden recanted his statement to the police.  Instead, he claimed full responsibility for the crimes and claimed that the defendant was not present.  On cross-examination, the State elicited the fact that Carden had already been permitted to plead guilty to a reduced charge of second degree murder.  Furthermore, Carden admitted that both he and the defendant were affiliated with the "A-town Mafia Gangstas," a "club" that operated within Anderson County.  The implication of this admission was that as a member of the A-town Mafia Gangstas, Carden was honor-bound not to betray a fellow member.

When the defendant was questioned following his arrest, he admitted to spending the night with Carden the night of the murder, but he did not acknowledge any involvement in the crimes.  He stated, "Me and Trinidy went up to the Bond house that night.  We knocked on the door.  No one was home.  Take me to jail."

Several witnesses linked the defendant to the murder of Bond.  Wesley Powers testified that at approximately 3:00 a.m. on the morning of the murder, he received a phone call from the defendant requesting Powers to take him and Carden to Knoxville.  The defendant told Powers he had broken into a house and "knocked somebody unconscious."  Although Powers declined to drive the defendant and Carden to Knoxville at that time, he did take them to Martha Wine's residence later that day where he saw a television and a VCR.  While at Wine's residence, the defendant told Powers that he hit the victim with a brick.

Martha Wine testified that the defendant, "Wes," and Carden showed up at her house at approximately 5:00 a.m. on the morning of the murder.  They had a TV, a VCR, and a CD player, and they asked her whether they could store them at her house.  At that time, Carden told her that he and the defendant had beaten the victim with a brick.  The following day, Carden admitted to Wine that "he" killed the victim.

---

[1] The victim's son was previously married to Carden's mother.

Jason Johnson, Carden's cousin, testified that three days after the murder the defendant had told him that he had hit the victim with a brick, and that he felt no remorse about the killing. Although two defense witnesses implicated Johnson as Carden's accomplice instead of the defendant, Johnson denied any involvement in the crime.

At the conclusion of the proof, the State nolle prossed the charge of premeditated murder and proceeded solely on the charge of felony murder. Ely requested jury instructions on the lesser offenses of second degree murder, reckless homicide, criminally negligent homicide, facilitation of felony murder, and accessory after the fact. The trial court, finding that no lesser offenses to felony murder existed under the current statute, declined to give these instructions. The jury found the defendant guilty as charged of felony murder. On appeal, the Court of Criminal Appeals held that accessory after the fact was not a lesser-included or lesser grade offense of felony murder. The court further held that, even assuming the other requested offenses were either lesser-included or lesser-grade offenses of felony murder, no error occurred because the evidence did not support an inference of guilt of any of these other lesser offenses.[2]

### *STATE v. BOWERS*

On the afternoon of April 21, 1996, victim Peter Whatmough and his girlfriend Stacy Yessler stopped in Knoxville en route from Florida to Ohio. They drove to the Walter P. Taylor housing project, purchased three rocks of crack cocaine, and then drove to a motel room where they ingested the cocaine. Later that day, they drove back to the housing project to purchase more cocaine. While driving through the area, Yessler recognized Artis Bonner as the person from whom she had purchased the cocaine earlier that day. Yessler called Bonner over to the vehicle and inquired about purchasing more cocaine. While Yessler and Whatmough waited in the van, Bonner entered one of the apartments in the housing complex. A few minutes later, Bonner came running out of the apartment and jumped into the vehicle with Yessler and Whatmough, telling them to "hurry up and get on out of [here]." As Whatmough started the engine and placed the vehicle in drive, he was fatally shot in the head by a man through the driver's window as they were attempting to leave. The bullet traveled through Whatmough's head, grazed Yessler's arm, and ultimately struck Bonner.

During the police investigation that followed, Bonner identified the defendant as the person who shot Whatmough. Another witness at the scene, Regina Chatham, told police that she had seen the defendant running from the scene with a gun.

---

[2] Judge Welles, in a concurring opinion, stated his position that second degree murder and facilitation of felony murder were lesser-included offenses of felony murder, but that because the evidence supported a finding of guilt on the greater offense, and the record was devoid of any evidence permitting an inference of guilt on the lesser offense, the error was harmless. Judge Wade dissented, finding that not only was second degree murder a lesser-included offense of felony murder, but there was some evidence in the record to support a finding that the defendant knowingly participated in the killing of the victim, and therefore a charge on second degree murder would have been appropriate. Instead, Judge Wade opted for a strict harmless error analysis and found that, because the error was not harmless beyond a reasonable doubt, the failure to instruct was reversible error.

At trial, Bonner identified the defendant as the person whom he saw in the driver's window at the time Whatmough was shot. However, he recanted that portion of his statement in which he had claimed that the defendant was the person who actually fired the shot that killed the victim. Bonner testified that because he was originally charged with the murder in this case, he had implicated the defendant only to get himself out of jail. Furthermore, witness Regina Chatham also recanted her previous statement, claiming that she had previously identified the defendant as the man she saw running from the scene with a gun because she was mad at him. Stacy Yessler was unable to identify the defendant as the person who shot Whatmough.

The defendant was originally charged with two counts of felony murder: one in the perpetration of a robbery and one in the perpetration of a theft. At the conclusion of the State's proof, the defendant moved for a judgment of acquittal on both counts of felony murder on the grounds that no underlying felony had been proven. The State conceded the issue, and the trial court dismissed both felony murder counts. The defense presented no proof. Over the defendant's objection, the trial court then instructed the jury on second degree murder, reckless homicide, and criminally negligent homicide as lesser-included offenses of felony murder. The jury found the defendant guilty of second degree murder. On appeal, the Court of Criminal Appeals held that second degree murder was a lesser-included offense under section (b) of the lesser-included offense test adopted by this Court in State v. Burns, 6 S.W.3d 453 (Tenn. 1999).

On appeal to this Court, both cases were consolidated, and we heard oral argument in Knoxville during our September 2000 session. The panel hearing the consolidated cases during that session consisted of four Justices, including Chief Justice Anderson, Justice Birch, Justice Holder, and Justice Barker. After oral argument, and upon further consideration of the record in this case, we requested reargument before the full panel of this Court at our May 2001 session in Knoxville. In addition to the issues previously designated as being of concern to this Court, we directed the parties to specifically address whether a failure to instruct a jury on a lesser-included offense is subject to harmless error analysis, and if so, whether the harmlessness of any such error is determined by a constitutional, statutory, or other standard of harmless error analysis.

For the reasons given herein, we conclude that the offenses of second degree murder, reckless homicide, and criminally negligent homicide are lesser-included offenses of felony murder. Accordingly, we affirm the judgment of the Court of Criminal Appeals in Bowers's case. In Ely's case, we find that the failure to instruct the jury as to second degree murder was error. Applying a constitutional harmless error standard, we cannot conclude that this error is harmless beyond a reasonable doubt, and we reverse the judgment of the intermediate court in Ely's case. Ely's case is remanded to the Criminal Court of Anderson County for a new trial.

**ANALYSIS**

The State maintains in Ely's case, and now concedes in Bowers's case, that there are no

lesser-included offenses to felony murder.[3]  It points out that the offense of felony murder requires no culpable mental state.  See Tenn. Code Ann. § 39-13-202(b) ("No culpable mental state is required for conviction under subdivision (a)(2) or (a)(3) [the felony murder provisions] except the intent to commit the enumerated offenses or acts in such subdivisions.").  However, each of the lesser offenses of second degree murder, reckless homicide, and criminally negligent homicide respectively requires proof of either a knowing, reckless, or negligent mental state.  Thus, because each of the lesser offenses requires an element that the greater does not, none can be a lesser-included offense of felony murder under part (a) of the Burns test.  Furthermore, the State asserts that because felony murder requires no mental state, and because each of the lesser offenses requires proof of either a knowing, reckless, or negligent mental state, these lesser offenses do not meet the requirements of part (b) of the test because they evince a greater, not lesser, degree of culpability than felony murder.  Finally, the State argues that facilitation of felony murder is not a lesser-included offense because the defendant was not charged with criminal responsibility for the conduct of another.

Defendant Bowers, of course, agrees with the State's position that second degree murder is not a lesser-included offense of felony murder.  Fully adopting the concept that felony murder does not require proof of a culpable mental state, Bowers additionally argues that the indictment charging him with felony murder did not place him on notice that he would be called on to defend a knowing killing.

Contrary to the positions taken by the State and Bowers, defendant Ely argues that the offenses of second degree murder, reckless homicide, criminally negligent homicide, accessory after the fact, and facilitation of felony murder are all lesser-included offenses under the facts of his case.  He makes three different arguments in support of his position that instructions should have been given on these lesser offenses.  First, he argues that the evidence, when viewed in the light most favorable to the State, supports a finding that he beat the victim to death with a brick.  Such conduct constitutes a knowing, reckless, or at the very least, criminally negligent mental state on his part.  Because the evidence would support finding the existence of one of these mental states, the trial court erred in failing to instruct the jury on these lesser offenses.

Alternatively, Ely argues that because no culpable mental state is required to prove felony murder, proof of any mental state would suffice, whether intentional, knowing, reckless, or negligent.

---

[3] Because the State conceded the issue in Bowers, some members of the Court initially questioned whether there was a justiciable case or controversy left to decide in that case.  "A moot case is one which has lost its character as a present, live controversy."  County of Shelby v. McWherter, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996).  "To avoid being dismissed as moot, cases or issues must be justiciable not only when a case is first filed but . . . [also] throughout the entire course of the litigation, including the appeal."  Id.  Despite the State's concession, it has not filed a motion to dismiss the appeal.  We are mindful that Bowers still has a conviction for second degree murder on his record, one that is ripe for reversal if the State's concession is accepted.  Finally, despite the State's concession of this issue, this Court is not bound by such concession.  As evidenced by its companion case, Ely, the issue of whether certain offenses are included within a felony murder charge remains very much alive and subject to a decision by this Court.

-6-

Hence, as there was adequate proof in the record to support a finding of one of these mental states, he argues that the concomitant lesser offenses should have been charged.

Ely's third alternate argument revolves around the common law doctrine of transferred or supplied intent. Under this doctrine, the intent to commit the underlying felony substitutes for the mental state required for the commission of first degree murder, that is, intent and premeditation. Therefore, the mental culpability required to prove first degree murder, whether felony or premeditated, is greater than that required for either second degree murder, reckless homicide, criminally negligent homicide, or facilitation. Accordingly, he argues that the latter offenses are included within the former under section (b) of the Burns test.

### HISTORICAL REVIEW OF LESSER-INCLUDED OFFENSES IN TENNESSEE

Tennessee Code Annotated section 40-18-110 mandates giving an instruction on every offense "included" in an indictment. We have interpreted this provision to mean that "'a trial court must instruct the jury on all lesser-included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense.'" Burns, 6 S.W.3d at 464 (quoting State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999)). The definition of what constitutes an included offense in Tennessee jurisprudence has evolved over time. In 1979, this Court adopted a definition that described an offense as necessarily included in another "if the elements of the greater offense, as those elements are set forth in the indictment, include, but are not congruent with, all the elements of the lesser." Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979). This approach, coined "the statutory elements approach," involved a strict comparison between the statutory elements of the offense charged in the indictment with the statutory elements of the lesser offense at issue. Under this approach, an offense was not considered necessarily included in another unless the elements of the lesser offense were a subset of the elements of the charged offense. See Schmuck v. United States, 489 U.S. 705, 716 (1989). In other words, the lesser offense could not require proof of any element that was not also required for the greater offense.

This definition of lesser-included offenses was expanded in State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), to include lesser "grades" or "classes" of offenses. A lesser grade or class offense was defined by whether it was located in the same statutory chapter and part of the Code as the greater offense. See State v. Cleveland, 959 S.W.2d 548, 553 (Tenn. 1997). The expanded definition adopted in Trusty was based on our perception that application of the Howard definition was too restrictive and, under the 1989 Criminal Sentencing Reform Act, precluded a defendant from obtaining instructions on offenses that were traditionally considered lesser-included offenses under the common law.

However, this expanded definition soon proved unworkable. First, the structure of the 1989 Act was such that any particular chapter or part might contain diverse offenses that were related in a general sense but quite distinct in character. Many lesser grade offenses within the same class of crime could not reasonably be considered as lesser-included under any common sense definition of

the term.  See Burns, 6 S.W.3d at 465.  The fact that many criminal offenses were scattered throughout the Code, and did not necessarily fall neatly into a lesser grade or class, further complicated the analysis.  Id.

Still, we were reluctant to apply a strict elements approach because it was perceived that such an approach could deprive a defendant in some cases of the right to present a defense.  We resolved the dilemma by first overruling Trusty, see State v. Dominy, 6 S.W.3d 472 (Tenn. 1999), and by then adopting a modified Model Penal Code approach, see Burns, 6 S.W.3d at 466-67.  Under the test adopted in Burns, an offense is lesser included if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>>
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. at 467.  Under this test, the statutory elements remain the focus of the inquiry.  Id.

Our intent in formulating the Burns test was to provide trial courts and litigants with a more simple and predictable method of determining whether a particular lesser offense was included in a greater charged offense.  Part (a) of the test was simply a re-adoption of the Howard statutory elements approach.  Part (b) of the test was designed to accommodate offenses that were "logically related to the charged offense in terms of the character and nature of the offense but in which the

injury or risk of injury, damage, or culpability [was] of a lesser degree than that required for the greater offense." Burns, 6 S.W.3d at 466. Part (c) of the test was meant to apply to situations in which a defendant attempts to commit, or solicits another to commit, either the crime charged or a lesser-included offense, but no proof exists of the completion of the crime. Part (c) also applies when the defendant participates in some lesser role than as the principal actor.

### *APPLICATION OF BURNS TO DETERMINE LESSER-INCLUDED OFFENSES OF FELONY MURDER*

When applying the Burns test to determine whether second degree murder, reckless homicide, criminally negligent homicide, and facilitation of felony murder are lesser-included offenses of felony murder, we necessarily begin with a comparison of the elements of the respective offenses. Under current law, the offense of felony murder requires proof of the following elements:

1. That the defendant unlawfully killed the alleged victim;

2. that the killing was committed either in the perpetration of or the attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse or aircraft piracy; or as the result of the unlawful throwing, placing or discharging of a destructive device or bomb; and

3. that the defendant intended to commit the alleged felony.

See Tenn. Code Ann. § 39-13-202(a)(2), (a)(3), (b) (1997).

To compare, the offense of facilitation of felony murder requires proof that

1. a killing was committed in the perpetration of one of the felonies specified by Tenn. Code Ann. § 39-13-202(a)(2) or (3);

2. the defendant knew that another person intended to commit the underlying felony, but he or she did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense; and

3. the defendant furnished substantial assistance to that person in the commission of the felony; and

4. the defendant furnished such assistance knowingly.

See Tenn. Code Ann. §§ 39-13-202, 39-11-403 (1997). The offenses of second degree murder, reckless homicide, and criminally negligent homicide require proof that

1.      the defendant unlawfully killed the alleged victim; and

2.      the defendant acted either knowingly (second degree murder), recklessly (reckless homicide), or with criminal negligence (criminally negligent homicide).

See Tenn. Code Ann. §§ 39-13-210, -212, -213 (1997).

The State argues that facilitation of felony murder is not a lesser-included offense of felony murder because Ely was not specifically charged with criminal responsibility for the conduct of another. We disagree. First, we note part (c) of the Burns test expressly states that facilitation of the charged offense is a lesser-included offense of the charged offense. Second, the facilitation statute applies to a person who has facilitated the criminal conduct of another by furnishing substantial assistance but who also acted without an intent to promote, assist in, or benefit from the commission of the felony. See Tenn. Code Ann. § 39-11-403 (1997) Sentencing Commission comments. This Court has previously recognized that "'virtually every time one is charged with a felony by way of criminal responsibility for the conduct of another, facilitation of the felony would be a lesser-included offense.'" State v. Fowler, 23 S.W.3d 285, 288 (Tenn. 2000); Burns, 6 S.W.3d at 470. Although Ely was not specifically charged as being criminally responsible for Carden's conduct, we note that he was charged in a joint indictment with Carden for the felony murder of the victim in this case. Thus, we find that the failure to charge him as criminally responsible instead of jointly liable as a principal is insignificant, and we hold that facilitation of felony murder is a lesser-included offense in this case.

Applying part (a) of the Burns test to the lesser offenses of second degree murder, reckless homicide, and criminally negligent homicide, we note that all require proof of a specific mental state, which is not an element of that felony murder. Thus, none of these offenses can be considered lesser-included offenses under part (a). Moreover, these offenses do not qualify as lesser-included offenses under part (c) of Burns because they obviously do not fall within the category of attempt, facilitation, or solicitation.

Applying part (b) of the test, an offense may qualify as lesser included if "it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability; and/or (2) a less serious harm or risk of harm to the same person, property or public interest." Burns, 6 S.W.3d at 466-67. We note that the relevant portion of the Burns test does not say "a less culpable mental state," but rather, "a *different* mental state indicating a *lesser kind* of culpability." (emphasis added). We made this distinction deliberately, recognizing that there are certain offenses in the Code that are related but have different mental states that do not fit neatly into the hierarchy of intentional, knowing, reckless, or negligent.

Under our statutory scheme the various criminal offenses, including homicide offenses, are classified according to seriousness and level of culpability. As we explained in Burns,

> [i]n a general sense, the various criminal offenses can be visualized as "layers," with the most serious, culpable versions of each type of crime at the top, meriting the most severe punishment. Correspondingly, underneath are the less serious versions in decreasing order of seriousness and culpability and with consequently less serious punishment.

Id. at 466. First degree murder is classified as the most serious type of homicide, with a corresponding punishment of either death, life imprisonment without parole, or life imprisonment with parole. Tenn. Code Ann. § 39-13-202(c). The lesser forms of homicide are listed in order of seriousness and levels of culpability.

Tennessee has a single first degree murder statute that encompasses both premeditated murder and felony murder. See Tenn. Code Ann. § 39-13-202 (1997). Premeditated murder and felony murder are not designated by that statute as separate and distinct offenses but rather as alternative means by which criminal liability for first degree murder may be imposed. See Carter v. State, 958 S.W.2d 620, 624-25 (Tenn. 1997); State v. Hurley, 876 S.W.2d 57, 70; see also State v. Darden, 12 S.W.3d 455, 458 (Tenn. 2000). The mental state required for the commission of felony murder is intent to commit the alleged felony. Tenn. Code Ann. § 39-13-202(b). While this is a *different* mental state than that required for premeditated murder, in terms of culpability it equates with the intent required for the commission of premeditated murder. Under our statutory scheme, one who commits felony murder is held to the same level of culpability as one who commits premeditated murder. Both are subject to punishment by death, life in prison without parole, or life imprisonment with parole.

When comparing the offense of felony murder to the lesser homicide offenses, it is immediately apparent that one accused of felony murder is held to a higher level of culpability, as felony murder is considered the more serious offense and merits a more severe punishment than either second degree murder, reckless homicide, or criminally negligent homicide.[4] In other words, when a death results from the commission of, or the attempt to commit, a felony, the mental state required for the commission of the felony is deemed a more culpable mental state than knowledge, recklessness, or negligence.

After comparing the respective elements of felony murder, second degree murder, reckless homicide, and criminally negligent homicide, it appears that the elements of the lesser offenses are a subset of the elements of the greater and otherwise differ only in the mental state required. We hold that because the mental states required for the lesser offenses differ only in the level of culpability attached to each in terms of seriousness and punishment, the offenses of second degree

---

[4] One convicted of second degree murder faces a possible punishment from fifteen (15) to sixty (60) years, Tenn. Code Ann. §§ 39-13-210, 40-35-111(b)(1) (1997); one convicted of reckless homicide faces from two (2) to twelve (12) years, Tenn. Code Ann. §§ 39-13-215, 40-35-111(b)(4); and one convicted of criminally negligent homicide faces from one (1) to six (6) years, Tenn. Code Ann. §§ 39-13-212, 40-35-111(b)(5).

murder, reckless homicide, and criminally negligent homicide are lesser-included offenses of felony murder under part (b) of the Burns test.[5]

### *APPLICATION TO STATE v. BOWERS*

Although we have concluded that second degree murder is a lesser-included offense of felony murder under our present statutory scheme, that conclusion does not end our inquiry. The question remains whether the evidence in these respective cases justified a jury instruction on those offenses. In Burns, we acknowledged that whether a lesser-included offense must be charged in a jury instruction is a two-part inquiry: first, whether the lesser offense is included in the greater under the test adopted, and second, whether a charge is justified by the evidence. Burns, 6 S.W.3d at 467. The second step of the analysis adopted in Burns requires a determination of (a) whether any evidence exists that reasonable minds could accept to prove the existence of a lesser-included offense, and (b) whether the evidence is legally sufficient to support a conviction for the lesser-included offense. Id. at 469. The evidence must be viewed liberally in the light most favorable to the existence of the lesser-included offense without making any judgments as to the credibility of such evidence. Id.

Bowers argues first, that he did not have notice that he would have to defend against a lesser charge of homicide, and second, that because the State failed to present any proof of intent to commit the underlying felony of robbery or theft, he cannot be convicted of the offense of felony murder. We reject Bowers's claim that he did not have notice of the lesser homicide offenses. At the time his case was tried, State v. Trusty was the controlling legal authority on lesser-included offenses. Under Trusty, defendants were entitled to jury instructions on both lesser included offenses as

---

[5] Although the question of whether lesser forms of homicide are included offenses of felony murder has been previously addressed by the courts of several jurisdictions, the authorities on this subject are split. Courts in the states of Arizona, Arkansas, Illinois, Indiana, Maryland, Nebraska, Washington, and West Virginia have all held that the lesser forms of homicide are not lesser-included offenses of felony murder under their respective statutory schemes. Almost universally, these courts have applied a strict statutory elements test and have based their decisions on the rationale that because the lesser homicide offenses require proof of a culpable mental state, and the offense of felony murder does not, the lesser offenses are not included in the greater. See State v. Sharp, 973 P.2d 1171 (Ariz. 1999); Brown v. State, 929 S.W.2d 146 (Ark. 1996); People v. Williams, 732 N.E.2d 767 (Ill. App. Ct. 2000); Fleener v. State, 412 N.E.2d 778 (Ind. 1980); West v. State, 720 A.2d 1253 (Md. 1998); State v. Bjorklund, 604 N.W.2d 169 (Neb. 2000); State v. Tamalini, 953 P.2d 450 (Wash. 1998); State v. Dennison, 801 P.2d 193 (Wash. 1990); State v. Wade, 490 S.E.2d 724 (W. Va. 1997).

Other jurisdictions, including the District of Columbia, Florida, Kansas, Massachusetts, Michigan, Minnesota, Missouri, New Mexico, and North Carolina, have held that lesser degrees of homicide may be considered lesser-included offenses of felony murder. Most of these cases apply some form of the doctrine of transferred or imputed intent in which the intent to commit the underlying felony in a felony murder case substitutes for the intent to kill. See Towles v. United States, 521 A.2d 651 (D.C. 1987); Scurry v. State, 521 So. 2d 1077 (Fla. 1988); State v. Rayton, 1 P.3d 84 (Kan. 2000); People v. Carter, 236 N.W.2d 500 (Mich. 1975); Commonwealth v. Donovan, 662 N.E.2d 692 (Mass. 1996); Bellcourt v. State, 390 N.W.2d 269 (Minn. 1986); State v. Lee, 654 S.W.2d 876 (Mo. 1983); State v. McGruder, 940 P.2d 150 (N.M. 1997); State v. James, 466 S.E.2d 710 (N.C. 1996).

The results in each of these cases depended upon the respective statutory scheme in each state for homicide and upon the statutory or judicial definition of lesser-included offense unique to that state. Likewise, our determination must be based on our own statutory scheme for homicide and on the definition of lesser-included offense as adopted in Burns.

defined under the statutory elements approach of <u>Howard</u>, and on all offenses that were a lesser grade or class of the charged offense, assuming that sufficient evidence existed supporting a finding of those offenses. Because second degree murder and the remaining lesser homicide offenses were clearly lesser grade offenses under Chapter 13 of the criminal code, the defendant was clearly on notice that he might have to defend against such lesser offenses.

As for his contention that he cannot be convicted of a lesser homicide offense when there lacks proof of his intent to commit the underlying felony, we think Bowers misconstrues the procedure outlined in <u>Burns</u> for determining when a lesser-included offense instruction should be given. <u>Burns</u> outlined a two-part procedure: first, the trial court must apply the adopted test to decide whether a particular offense is lesser-included within the greater. <u>Burns</u>, 6 S.W.3d at 466-67. This test focuses on the statutory elements of the respective greater and lesser offenses to determine whether the lesser is legally included in the greater and not on the proof actually presented at trial. <u>Id.</u> at 467. "If a lesser offense is not included in the offense charged, then an instruction should not be given, regardless of whether evidence supports it." <u>Id.</u> Once this determination is made, the second part of the inquiry is whether there is any evidence that reasonable minds could accept as to the existence of the lesser-included offense and, if so, whether that evidence is legally sufficient to support a conviction for the lesser-included offense.

Because we deem second degree murder a lesser-included offense of felony murder, we are compelled to sustain the trial court's finding in that regard. The only questions remaining are whether there is any evidence in Bowers's case of knowledge, recklessness, or negligence in the killing of Peter Whatmough, and whether this evidence is sufficient to support a conviction for the respective lesser offenses requiring these mental states.

"Knowing" conduct results "when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302 (b) (1997). "Reckless" conduct is defined as

> when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(c). "Criminal negligence" is defined as

> when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(d).  The mental states of recklessness and criminal negligence are encompassed within the definition of "knowing."  Tenn. Code Ann. § 39-11-301(a)(2).

The evidence in this case includes testimony by Artis Bonner that the face he saw in the window of the van at the time the victim was shot was that of the defendant Bowers.  A careful review of the evidence shows that the likely motive for the shooting in this case stemmed from a drug deal gone bad, and that the likely target of this shooting was Bonner, not Whatmough.  Nevertheless, the law is well settled that criminal liability is the same regardless of whether the third-party victim is unintended.  See Millen v. State, 988 S.W.2d 164, 168 (Tenn. 1999).  The evidence shows that the defendant aimed and fired a handgun in the general direction of a van containing three people.  Such conduct clearly falls within the definition of knowing conduct because Bowers had to be aware that he was reasonably certain to strike and kill one of those people.  We therefore conclude that the evidence was sufficient to support a conviction for second degree murder.  It was entirely proper for the trial court to instruct the jury on that offense and on the lesser offenses of reckless homicide and criminally negligent homicide under the principles and procedures espoused in Burns.  Bowers's conviction for second degree murder is therefore affirmed.

### APPLICATION TO STATE v. ELY

Having concluded that facilitation of felony murder, second degree murder, reckless homicide, and criminally negligent homicide are all lesser-included offenses of felony murder, we must determine whether, under the second part of the Burns analysis, the evidence in Ely's case warranted a jury instruction on such offenses.  Burns, 6 S.W.3d at 467.  If so, the failure to instruct such offenses was in error.

As previously summarized, the evidence in this case shows that Ely and co-defendant Carden entered the home of William Bond, repeatedly beat Bond over the head with a brick, and then stole several pieces of electronic equipment.  By Ely's own admission to several witnesses, this was a joint enterprise.  While there was some question as to whether it was Carden or Ely who actually killed the victim, the evidence was clear that the commission of the underlying felony of robbery was a joint undertaking.  Ely's defense was that he was not present; therefore, he was either guilty of some degree of homicide or wholly innocent of any wrongdoing.  Applying the Burns analysis to the evidence in this case to determine whether facilitation of felony murder should have been instructed, we find that no reasonable juror could have believed that although Ely was present, knew that Carden intended to commit the robbery, and furnished substantial assistance in the commission of the robbery, he nevertheless did not intend "to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense."  Therefore, no instruction on the lesser-included offense of facilitation was warranted.  See Burns, 6 S.W.3d at 470-71 (stating that where the facts were susceptible to only two interpretations, neither of which encompassed a theory of facilitation, no instruction on the lesser-included offense of facilitation was warranted).

Our review of the record leads us to conclude that there was, however, sufficient evidence from which reasonable jurors could have convicted Ely of second degree murder, reckless homicide,

-14-

or criminally negligent homicide. If the jury believed that Ely was present, it may have reasonably concluded that his actions in either repeatedly striking the victim over the head with a brick, or assisting co-defendant Carden as he did so, constituted *at least* criminally negligent, reckless, or knowing conduct. Certainly one who participates in beating another person over the head with a brick "ought to be aware of a substantial and unjustifiable risk [death] will occur." If the jury believed this theory of the offense, it could have convicted Ely of criminally negligent homicide. Tenn. Code Ann. § 39-11-302(d). Alternatively, an ordinary person engaging in such conduct would be aware of the "substantial and unjustifiable risk that [death] will occur." If the jury believed that Ely was aware of, but consciously disregarded, such risk, it could have convicted him of reckless homicide. Tenn. Code Ann. § 39-11-302(c). Similarly, participation in beating a victim over the head with a brick is conduct "reasonably certain to cause [death]." Tenn. Code Ann. § 39-11-302(b). If the jury believed that Ely was "aware of the nature of the conduct or that [his] conduct [was] reasonably certain to cause [death]," *i.e.*, a knowing killing, it may have convicted him of second degree murder. We believe that a conviction for any of these three lesser-included offenses was supported by the evidence, and that failure to instruct these offenses was error.

*Harmless Error Analysis*

Because we have concluded that the trial court erred by not instructing on some of the lesser offenses, we must determine whether that error was harmless. We have held that the erroneous failure to instruct on lesser-included offenses may be harmless under certain circumstances. Williams, 977 S.W.2d at 105. In Williams, we held the trial court's failure to instruct the jury on voluntary manslaughter was harmless where the offenses of premeditated first degree murder, second degree murder, and reckless homicide were all instructed. Our reasoning was based on the fact that by convicting the defendant of first degree murder, the highest offense charged, the jury necessarily determined that the proof was sufficient to establish all the elements of that offense beyond a reasonable doubt, to the exclusion of all lesser offenses. Accordingly, we held that the trial court's erroneous failure to charge voluntary manslaughter was harmless.

There has been some confusion since Williams, however, as to whether the right to receive a lesser-included offense instruction is constitutional or non-constitutional in nature. The distinction is significant, because if the right is constitutional in nature, the State bears the burden of showing that a deprivation of this right is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967); cf. State v. Scott, 33 S.W.3d 746, 755 (Tenn. 2000); Momon v. State, 18 S.W.3d 152, 164 (Tenn. 1999). However, if the right is not constitutional in nature, the defendant bears the burden of showing the harmfulness of its deprivation. Moreover, the standard for assessing the effect of a constitutional error is higher than that for assessing the effect of a non-constitutional error. An error affecting a constitutional right is presumed to be reversible, and any such error will result in reversal of the conviction unless the State proves beyond a reasonable doubt that the error did not affect the outcome of the trial. State v. Harris 989 S.W.2d 307, 315 (Tenn. 1999). A non-constitutional error, on the other hand, is presumed not to be reversible, and no judgment of conviction will be reversed unless the error affirmatively appears to have affected the result of the trial on the merits, or unless considering the record as a whole, the error involves a substantial right

which more probably than not affected the judgment or resulted in prejudice to the judicial process. Id.; see also Tenn. R. App. P. 36(b), Tenn. R. Crim. P. 52(a).

This Court acknowledged in Williams that instruction on lesser-included offenses had been described in prior Tennessee cases as a constitutional right. 977 S.W.2d at 105. In fact, we recognized that "under certain circumstances," the right to instruction on lesser-included offenses *should* be deemed a constitutional right. Id. at 104 (citing Schad v. Arizona, 501 U.S. 624, 646 (1991), and Beck v. Alabama, 447 U.S. 625 (1980)). Despite our recognition of the constitutional implications of the right, we characterized the right as one "derive[d] from a statute." Williams, 977 S.W.2d at 105 (citing Tenn. Code Ann. § 40-18-110(a) (1997)). We then purported to apply a non-constitutional standard for determining harmless error, stating,

> Accordingly, we conclude that a trial court's erroneous failure to instruct on voluntary manslaughter is subject to harmless error analysis. Reversal is required if the error affirmatively appears to have affected the result of the trial on the merits, or in other words, reversal is required if the error more probably than not affected the judgment to the defendant's prejudice.

Id. at 105. In articulating our holding later in the opinion, however, we applied a *constitutional* error standard, stating,

> Accordingly, the trial court's erroneous failure to charge voluntary manslaughter is *harmless beyond a reasonable doubt* because the jury's verdict of guilt on the greater offense of first degree murder and its disinclination to consider the lesser-included offense of second degree murder clearly demonstrates that it certainly would not have returned a verdict on voluntary manslaughter.

Id. at 106 (emphasis added) (citations omitted).

Shortly after Williams, we released State v. Bolden, 979 S.W.2d 587 (Tenn. 1998). In Bolden, the defendant, charged with first degree murder, objected to a trial court's instructions submitting the lesser-included offense of second degree murder to the jury. We upheld the charge, holding that the trial court's obligation to charge lesser-included offenses under Tennessee Code Annotated section 40-18-110(a) was mandatory if the evidence introduced at trial was legally sufficient to support a conviction for the lesser offense. Citing Williams, we applied a constitutional standard, stating that the failure to instruct under such circumstances could be "harmless beyond a reasonable doubt." Id. at 593.

More recently, however, in State v. Swindle, 30 S.W.3d 289 (Tenn. 2000), we applied non-constitutional harmless error analysis in addressing the failure to instruct on lesser-included offenses. Addressing the trial court's failure to charge misdemeanor assault as a lesser-included offense of aggravated sexual battery, we cited Williams and held that reversal was required only "if the error affirmatively affected the result of the trial, or if the error more probably than not affected the

judgment to the defendant's prejudice." <u>Id.</u> at 293. We made no reference in <u>Swindle</u> to the <u>Chapman</u> standard for analyzing constitutional errors.

This case presents an opportunity to clarify any confusion as to the standard to be applied in this context. A review of our case law demonstrates that an erroneous failure to instruct on lesser-included offenses is a constitutional error for which the State bears the burden of proving its harmlessness beyond a reasonable doubt. Although our statement in <u>Williams</u> that the right to lesser-included offense instructions "derives from statute" was admittedly equivocal, the right to lesser-included offense instructions does not derive *only* from statute. As one of our esteemed colleagues on the Court of Criminal Appeals has recently noted, "[c]onstitutional and statutory recognition of a right afforded citizens in this state are not mutually exclusive. Statutes should, can, and do reflect constitutional values, privileges and rights."[6] We recognized in <u>Bolden</u>, that "[o]ne purpose of [section 40-18-110(a)] is to protect the right of trial by jury by instructing the jury on the elements of all offenses embraced by the indictment." 979 S.W.2d at 593. That the right of trial by jury is of constitutional dimension is evidenced by its embodiment in Article I, section 6 of the Tennessee Constitution, which states, "the right of trial by jury shall remain inviolate." Accordingly, we hold that this constitutional right is violated when the jury is not permitted to consider *all* offenses supported by the evidence.

Our holding that the right to lesser-included offense instructions is of constitutional dimension does not announce a new principle. Pre-<u>Williams</u> case law clearly stated that the right to instruction on lesser included offenses derived not only from statute, but also from the constitutional right of trial by jury. <u>State v. Staggs</u>, 554 S.W.2d 620, 626 (Tenn. 1977); <u>Strader v. State</u>, 210 Tenn. 669, 682, 362 S.W.2d 224, 230 (1962). Although <u>Williams</u> expressly overruled these cases to the extent they had held that failure to instruct lesser-included offense mandated automatic reversal, we did not intend to overrule the statements in those cases recognizing the constitutional aspects of the right, or to limit the characterization of the right as one only protected by statute. We conclude that the right has both a statutory and a constitutional basis. Therefore, when determining whether an erroneous failure to instruct on a lesser-included offense requires reversal, we hold that the proper inquiry for an appellate court is whether the error is harmless beyond a reasonable doubt.

The facts of this case differ dramatically from those in <u>Williams</u>. The jury in <u>Williams</u> was instructed not only on the charged offense of premeditated first degree murder, but also on the lesser-included offenses of second degree murder and reckless homicide. The error in failing to charge voluntary manslaughter was deemed harmless beyond a reasonable doubt because by rejecting the lesser offense of second degree murder, the jury clearly demonstrated its disinclination to convict on any lesser offenses, including voluntary manslaughter. <u>Williams</u>, 977 S.W.2d at 106. In contrast, the jury in this case was given no option to convict of a lesser offense than felony murder. Although the evidence clearly was sufficient to support a conviction for second degree murder, reckless

---

[6] <u>State v. Beeler</u>, No. W1999-01417-CCA-R3-CD, 2000 WL 1670945, slip op. at 28-29 (Tenn. Crim. App. filed at Jackson, Nov. 22, 2000) (Witt, J.)

homicide, or criminally negligent homicide, the jury was not given an opportunity to reach a decision on these offenses. Under these circumstances, we cannot say the failure to instruct on the lesser-included offenses was harmless beyond a reasonable doubt.

## CONCLUSION

After careful consideration of the law and the facts presented in these cases, we conclude that facilitation, second degree murder, reckless homicide, and criminally negligent homicide are lesser-included offenses of felony murder. In Ely's case, the evidence supported instruction on the lesser offenses of second degree murder, reckless homicide, and criminally negligent homicide. Therefore, the failure to give such lesser-included offense instructions was error. We conclude that this error is not harmless beyond a reasonable doubt, and we reverse Ely's conviction and remand his case for a new trial. In Bowers's case, because the evidence supports a finding of a knowing killing, we conclude that the trial court properly instructed the jury on the lesser-included offense of second degree murder. Accordingly, we affirm Bowers's conviction for second degree murder.

Costs of the appeal in State v. Curtis Jason Ely shall be paid by the appellee, the State of Tennessee, and costs of the appeal in State v. Laconia Lamar Bowers shall be paid by the appellant, Laconia Lamar Bowers, for which execution shall issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE