IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2002

## STATE OF TENNESSEE v. ALFONZO WILLIAMS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-02093     Arthur T. Bennett, Judge**

---

**No. W2001-00452-CCA-R3-CD - Filed March 15, 2002**

---

The defendant was indicted for one count of first degree murder during the perpetration of an attempted robbery and one count of premeditated first degree murder. A Shelby County jury found the defendant guilty of felony murder in count one and the lesser-included offense of second degree murder in count two. The trial court merged the second degree murder conviction into the conviction for felony murder, and the defendant was sentenced to life imprisonment. In this appeal, the defendant alleges: (1) the evidence was insufficient to sustain his convictions; (2) the trial court erroneously neglected to charge the jury on the offenses of second degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide as lesser-included offenses of felony murder; and (3) the trial court failed to perform its duties as the "thirteenth juror." After a thorough review of the record, we conclude the trial court erred by failing to charge lesser-included offenses of felony murder. We affirm the guilty verdict for second degree murder; we reverse the conviction for felony murder and remand that count for a new trial with special instructions relating to the second degree murder verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part; Reversed in Part; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

A.C. Wharton, Jr., Public Defender; and Robert L. Parris (at trial), Trent Hall (at trial), and Tony N. Brayton (on appeal), Assistant Public Defenders, for the appellant, Alfonzo Williams.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and James M. Lammey, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

Mary Barksdale, the mother of the victim, was driving home from the grocery store on August 6, 1999, when her son's speeding vehicle passed her and crashed into a telephone pole. The victim was taken to the hospital but was deceased when Barksdale arrived. It was determined that the victim had suffered a gunshot wound prior to the car crash.

Memphis Police Officer Danny Barnes testified he went to the hospital and retrieved the following items taken from the victim: a bullet, which had been removed from the victim's body; a blunt cigar filled with marijuana; and approximately $400.

James Harris testified he was the victim's friend for many years and last saw him at the "In and Out Grocery" at approximately 8:45 p.m. on August 6th, when the victim showed him his red Cadillac automobile. Harris testified that he and the victim's nephew, Minquel Smith, rode around with the victim, and the victim dropped them off at different locations.

Minquel Smith, the victim's nephew, testified he saw the victim at the "In and Out Grocery" on the night of his death. Smith requested the victim give him a ride in his burgundy Cadillac to his residence, to which the victim agreed. James Harris rode with them, and Smith last saw the victim drive away with Harris.

Frederick Coleman, a butcher at Maxine's Grocery, testified he knew the victim since junior high school. Coleman last saw him on August 6th in the grocery's parking lot where the victim was selling "socks and car incense and stuff like that" out of his car. Coleman stated the grocery closed about 10:00 p.m., and he last saw the victim backing out of the parking lot alone.

Reginald Jackson, the defendant's cousin, testified the defendant requested a ride to the police station the day after the homicide because he had heard that officers were looking for him. Jackson further testified the defendant stated he shot the victim in self-defense because the "paranoid" victim pulled a gun, thinking the defendant was attempting to rob him.

Memphis Police Officer Bryant Jennings testified he processed the scene of the car crash and was unable to find a weapon. He further stated he performed a gunshot residue test on Minquel Smith and James Harris; the Smith test results were inconclusive and the Harris test results showed no indication of recent weapons fire.

Bobbie Fisher, the defendant's great aunt, testified the defendant told her on August 8th that "he had did [sic] something, but it was self-defense." On cross-examination, Fisher conceded the defendant never specifically mentioned shooting at or killing anyone, and she had "a hard time remembering things."

Dr. O'Bryant Cleary Smith, the Medical Examiner, reviewed the autopsy records of the victim and testified the victim died of a gunshot wound to the chest, which entered from the "right back side" and caused massive injuries to the chest cavity. Dr. Smith stated this wound would cause the victim to collapse within a matter of minutes.

Memphis Homicide Detective Clarence Cox testified he interviewed the defendant on August 8th at the police station. The defendant admitted getting a ride from the victim at Maxine's Grocery on August 6th around 10:00 p.m. The defendant stated he last saw the victim as he exited the victim's car, and the victim was talking to "a bum-looking person." The defendant denied any involvement in the homicide.

Larry Wright was the defendant's roommate. Wright testified that on August 6th shortly before midnight, he received a phone call from the defendant. Wright stated the defendant informed him that "[while] trying to rob [someone], . . . the dude pulled a gun up on him so he had to shoot him;" and the shooting occurred in a "burgundy shorty Cadillac" at Maxine's parking lot. Wright further testified the defendant called him again the following night stating, "if you all don't get [a named female] quiet, I'm going to have to kill a bunch of mother f-----s." On cross-examination, Wright conceded that the defendant never mentioned the victim by name, but stated the victim drove a burgundy/maroon "Cadillac Deville shorty."

Kathryn Byrd, the Public Defender's Criminal Investigator, testified she interviewed Reginald Jackson on September 8, 2000, and he stated he was "very drunk" during his interview with officers where he implicated the defendant. She stated Jackson said "he couldn't remember what he actually said and what had actually happened."

The defendant testified that on the evening of August 6th, he walked to Maxine's Grocery to buy cigars; it was closed when he arrived. He saw the victim, whom he had known for several years, and another person standing outside the store. The defendant stated he asked the victim to drive him to another store so he could get cigars, and the victim offered him a cigar. The defendant said he declined the cigar and told the victim, "I'm trying to get a box of them because I ha[ve] a nice amount of marijuana." The defendant stated the victim agreed to drive him to another store, but since it was also closed, the victim dropped him off near Church's Chicken. As the defendant walked toward Church's Chicken, he stated he saw the victim talking to "a junkie looking guy." The defendant further testified he proceeded to Church's Chicken and did not see the victim thereafter.

The defendant further testified he informed Larry Wright and Reginald Jackson that he had ridden with the victim that evening. He further testified that Wright, Jackson, and Bobbie Fisher were testifying falsely because Wright had a "run-in" with him over a "baseball cap" and was angry because he would not join Wright's gang; Jackson "had a grudge about . . . some money;" and Fisher was attempting to get a reward from Crime Stoppers, because "my family on that side of the family, they always been like that." He further stated he talked with Wright in jail, and Wright informed him that "the detectives scared him into saying what he said."

The jury convicted the defendant under count one of first degree murder in perpetration of an attempted robbery and under count two of second degree murder, the latter offense being a lesser-included offense of premeditated first degree murder. The trial court merged the second degree murder conviction into the felony murder conviction.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence is insufficient to support his convictions. We respectfully disagree.

### A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App. 1996).

This court does not reweigh or reevaluate the evidence, State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). This court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

### B. Analysis

First degree murder includes "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery. . . ." Tenn. Code Ann. § 39-13-202(a)(2). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Second degree murder is "a knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1).

The testimony established the victim died as a result of a gunshot wound which entered from the victim's right back side, causing massive chest injuries. Reginald Jackson, the defendant's

cousin, testified the defendant said that he shot the victim in self-defense after the victim, thinking he was being robbed, pulled a gun on him; however, no weapon was recovered from the victim's vehicle. Bobbie Fisher, the defendant's great aunt, testified the defendant told her that "he had did [sic] something, but it was self-defense." Larry Wright testified the defendant stated he had shot someone while trying to rob that person and threatened to kill anyone who did not remain quiet about it.

In Tennessee, "[a] confession may sustain a conviction where there is other evidence sufficient to show the commission of the crime by someone." Taylor v. State, 479 S.W.2d 659, 661-62 (Tenn. Crim. App. 1972). In other words, the state must establish the *corpus delicti*, which necessarily consists of two elements in a homicide case: (1) that there has been a death of a human being, and (2) that the death was produced by criminal agency. State v. Shepherd, 862 S.W.2d 557, 564 (Tenn. Crim. App. 1992). Only slight evidence of *corpus delicti* is necessary to corroborate a confession. State v. Ervin, 731 S.W.2d 70, 71-72 (Tenn. Crim. App. 1986). In the instant case, it is undisputed the victim was killed by a gunshot wound. The defendant's inculpatory statements to Wright, along with the other evidence at trial, sufficiently established that the victim's death was produced by the criminal agency of the defendant. Furthermore, Wright testified the defendant threatened anyone who spoke of the incident. Any attempt by an accused to suppress the testimony of a witness is relevant as a circumstance from which guilt of the accused may be inferred. State v. Maddox, 957 S.W.2d 547, 552 (Tenn. Crim. App. 1997).

The defendant's contention that the state's witnesses were simply not credible is likewise without merit. The jury, not this court, resolves questions concerning the credibility of witnesses. Tuttle, 914 S.W.2d at 932.

Accordingly, the evidence, viewed in a light most favorable to the state, sufficiently established that the killing occurred during an attempted robbery, thus establishing the elements of first degree felony murder. *See* Tenn. Code Ann. § 39-13-202(a)(2). Likewise, the evidence sufficiently established a knowing killing since the defendant was aware that his conduct was reasonably certain to cause death, thereby establishing second degree murder. *See* Tenn. Code Ann. §§ 39-11-106(a)(20), -13-210(a)(1). This issue is without merit.

## II. LESSER-INCLUDED OFFENSES

The defendant contends the trial court erroneously neglected to charge the jury on second degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide as lesser-included offenses of felony murder. Our supreme court has recently held that "the offenses of second degree murder, reckless homicide, and criminally negligent homicide are lesser-included offenses of felony murder under part (b) of the Burns test." State v. Ely, 48 S.W.3d 710, 721-22 (Tenn. 2001); *see* State v. Burns, 6 S.W.3d 453, 467 (Tenn. 1999). In fairness to the trial court, we specifically note that Ely was decided after the trial of this case. The state concedes that the trial court's failure to charge second degree murder, reckless homicide, and criminally negligent homicide

was error, but it asserts the error was harmless. The state does not address whether voluntary manslaughter is a lesser-included offense of felony murder.

## A. Lesser-Included Offenses - Generally

The trial court has a duty to instruct the jury on any lesser-included offenses of the charged offense when such instruction is supported by the evidence, regardless of whether the defendant has requested such an instruction. State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2000); Burns, 6 S.W.3d at 464. The standard for an appellate court's review of whether the trial court properly charged the jury regarding lesser-included offenses is de novo with no presumption of correctness. Bowles, 52 S.W.3d at 74.

If an offense is found to be a lesser-included offense, the court must next determine whether the evidence justified a jury instruction on the lesser-included offense. *Id.* at 75. This second step requires us to determine (1) whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense, and (2) whether the evidence is "legally sufficient" to support a conviction for the lesser-included offense. Burns, 6 S.W.3d at 469. We must view the evidence liberally in a light most favorable to the existence of the lesser-included offense without judging its credibility. *Id.*

## B. Application

It is now established that second degree murder, reckless homicide, and criminally negligent homicide are lesser-included offenses of felony murder. Ely, 48 S.W.3d at 721-22. Although Ely did not address whether voluntary manslaughter is a lesser-included offense of felony murder, this court has previously held that it is. *See* State v. Daniel Wade Wilson, No. E2000-01885-CCA-R3-CD, 2001 WL 872442, at *14 (Tenn. Crim. App. Aug. 2, 2001, at Knoxville), *perm. to app. pending*. We see no reason to deviate from this holding. Thus, we must only determine if "reasonable minds" could accept the lesser-included offenses, and whether the evidence is "legally sufficient" to support a conviction for the lesser-included offenses. Burns, 6 S.W.3d at 469.

Viewing the unique evidence in this case in a light favoring existence of the lesser-included offenses without judging credibility, we conclude "reasonable minds" could have accepted guilt on second degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide. We further conclude the evidence was "legally sufficient" to support each of these offenses. The trial court charged each of these offenses as lesser-included offenses of premeditated first degree murder; however, the structure of the jury charge did not allow the jury to consider them as lesser-included offenses of felony murder. The failure to charge these lesser-included offenses of felony murder was, therefore, error.

## C.  Harmless Error Analysis

The state contends the failure to charge lesser-included offenses was harmless error.  Such harmless error must be established beyond a reasonable doubt.  Ely, 48 S.W.3d at 727.  Our supreme court has applied the harmless error doctrine where the jury was instructed on at least one higher lesser-included offense and the jury, nevertheless, convicted on the greater offense.  State v. Williams, 977 S.W.2d 101, 105 (Tenn. 1998).  Here, no lesser offenses were charged.  Nevertheless, harmless error is not limited to the Williams rejection of an intermediate lesser offense; the proper inquiry is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial."  State v. Allen, ___ S.W.3d ___, ___, No. E1998-00416-SC-R11-CD, slip op. at 9 (Tenn. Feb. 22, 2002, at Knoxville).

In making the determination regarding harmless error, this court must examine the entire record, including the evidence at trial, the theory of the defense and the verdict.  *Id.*  The jury convicted the defendant of felony murder in count one of the indictment; there were no lesser-included offenses charged as to count one.  Furthermore, the jury rejected premeditated first degree murder in count two and convicted the defendant of second degree murder.  We respectfully reject the state's argument that the evidence of felony murder was "so overwhelming that a conviction [for that offense] was assured."  Accordingly, we are unable to conclude the failure to charge the lesser-included offenses was harmless beyond a reasonable doubt.

## D.  Double Jeopardy

We reject the defendant's argument that affirming second degree murder bars a retrial of the felony murder count due to double jeopardy.  The two-count indictment charged the single offense of first degree murder by alternative theories; namely, felony murder and premeditated murder. *See* State v. Cribbs, 967 S.W.2d 773, 788 (Tenn. 1998).  The trial court should, as the trial court did in this case, instruct the jury to return a verdict as to each count.  *Id.*  Upon convictions under both counts, the convictions are merged by the trial court.  *See* State v. Price, 46 S.W.3d 785, 825 (Tenn. Crim. App. 2000).  Thus, if the trial court enters only one "judgment of conviction," there is no double jeopardy violation.  *See* State v. Addison, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997).  There is no legal bar to verdicts being returned on both counts; there is no need to vacate one of the convictions since "conviction" in this context means the jury's verdict of guilt; the verdicts stand as a "legitimate finding of fact which the trial court should preserve by merging . . . into one judgment of conviction."  *Id.*

In the case at bar the only "judgment of conviction" that has been entered is for felony murder.  No "judgment of conviction" for second degree murder has been entered as second degree murder was merged into felony murder.  By affirming the second degree murder guilty verdict, a "judgment of conviction" has not, and should not, be entered at this time.  The indictment is still pending due to our reversal of the felony murder conviction, and the charge of first degree murder is still pending via felony murder.  Clearly, double jeopardy bars a retrial upon the offense of premeditated first degree murder; however, double jeopardy does not bar the retrial of felony murder.

**E. Remand**

The defendant is entitled to a new trial on his conviction for felony murder. This court has held the proper remedy for reversal due to the failure to charge all applicable lesser-included offenses on a felony murder conviction, originally merged with a second degree murder conviction, is to reinstate the second degree murder conviction, remand it for sentencing, remand the felony murder charge and its lesser-included offenses for retrial, and merge any new conviction following the new trial. *See* State v. Daniel Wade Wilson, supra at *19. We respectfully depart from Wilson to the extent it might suggest entry of a "judgment of conviction" for second degree murder prior to disposition of the felony murder count.

Accordingly, the conviction for felony murder in count one is reversed; count one is remanded for a new trial for the indicted offense of felony murder and all lesser-included offenses; the guilty verdict for second degree murder in count two is affirmed; no judgment of conviction under count two for second degree murder shall be entered pending disposition of count one; if the defendant is convicted upon remand of felony murder in count one, the second degree murder conviction shall be merged with the felony murder conviction; if the defendant is convicted under count one of the lesser-included offense of second degree murder or any other lesser-included offense of felony murder, that conviction shall merge into the single offense of second degree murder; and if the defendant is acquitted under count one, the trial court will sentence the defendant for second degree murder under count two.

## III. THIRTEENTH JUROR RESPONSIBILITY

The defendant contends the trial court failed in its duty as thirteenth juror. We respectfully disagree.

A trial judge has a mandatory duty to act as a thirteenth juror by independently weighing the evidence, passing upon the issues, and deciding whether the verdict is supported by the evidence. State v. Moats, 906 S.W.2d 431, 433 (Tenn. 1995). The trial judge should grant a new trial if the trial judge disagrees with the jury about the weight of the evidence. State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995); Tenn. R. Crim. P. 33(f). Reversal is required if the record indicates the trial court absolved itself of the responsibility of acting as the thirteenth juror. Carter, 896 S.W.2d at 122.

The issue of whether the trial judge properly functioned under the thirteenth juror rule presents a very close question. During the motion for new trial hearing, the trial judge, in response to defense counsel's specific request to invoke the thirteenth juror rule, stated:

> Of course, the Court can't second guess the jury in terms of whether they believe someone, if they may believe somebody's testimony and the Court may have some questions about it. But I can't second guess twelve members of the jury in regards to, you know, the credibility of the witnesses.

Thereafter, the trial judge queried defense counsel as to whether "it [is] automatic that I exercise that in every case."

After a lengthy discussion concerning the mandatory requirements of Tenn. R. Crim. P. 33(f) in which the state also agreed to the trial judge's obligation to independently weigh the evidence as the thirteenth juror, the trial judge stated he "ha[d] to give the credibility to these [state] witnesses." He further stated on two separate occasions that "as the 13th juror," the verdict should not be set aside.

The trial judge also filed a Report of Trial Judge in First Degree Murder Case as required by our supreme court rules. *See* Tenn. Sup. Ct. R. 12. In response to the question of whether "you as 'thirteenth juror' find the defendant guilty beyond a reasonable doubt," the trial judge indicated "[y]es, [b]ut it was a very close case."

Under these circumstances, we conclude that the trial judge properly exercised his responsibility as the thirteenth juror. This issue is without merit.

## CONCLUSION

In summary, we affirm the guilty verdict for second degree murder, reverse the judgment for felony murder, and remand for a new trial on the count of felony murder and all lesser-included offenses. The retrial of the felony murder count and its relationship to the outstanding guilty verdict for second degree murder shall be governed by the principles previously set forth in this opinion.

_____
JOE G. RILEY, JUDGE