IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Remanded by Supreme Court December 17, 2001

## STATE OF TENNESSEE v. REGINALD D. TERRY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-03934     W. Fred Axley, Judge**

---

**No. W2001-03027-CCA-RM-CD  - Filed August 27, 2002**

---

A Shelby County jury convicted the Defendant of attempted aggravated burglary, and this Court affirmed the conviction on direct appeal.  The Tennessee Supreme Court remanded the case to this Court solely to consider whether the trial court's failure to instruct on certain lesser-included offenses was "plain error," thus warranting review despite the Defendant's failure to timely file his motion for new trial.  On remand, we conclude that the trial court's failure to instruct on the lesser-included offenses in this case was not "plain error." Accordingly, we affirm the judgment of the trial court.

**On Remand from the Supreme Court; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

W. Mark Ward, Assistant Public Defender (on appeal); Timothy J. Albers, Assistant Public Defender; and William Yonkowski, Assistant Public Defender, Memphis, Tennessee, for the appellant, Reginald D. Terry.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; William L. Gibbons, District Attorney General; and Julie Mosley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION ON REMAND**

### I.  PROCEDURAL HISTORY

A Shelby County jury convicted the Defendant of attempted aggravated burglary as charged in the indictment, and the trial court sentenced the Defendant as a Range I standard offender to three years imprisonment.  This Court affirmed the Defendant's conviction on direct appeal, determining that because the Defendant had failed to file a timely motion for new trial, our review was limited to the sufficiency of the evidence and any "plain error."  See State v. Reginald D. Terry, No. W2000-00090-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 465 (Tenn. Crim. App., June 26, 2001, at

Jackson).  We concluded that the evidence was sufficient and that there was no "plain error" in the record.  Thereafter, the Defendant filed an application for permission to appeal to the Supreme Court of Tennessee.  In response thereto, our supreme court issued an order remanding the case to this Court to consider whether in light of the supreme court's opinion in State v. Ely, 48 S.W.3d 710 (Tenn. 2001), the trial court's failure to instruct on certain lesser-included offenses was "plain error," warranting review despite the Defendant's failure to timely file his motion for new trial.

On remand, we conclude that the trial court's failure to instruct on the offenses of aggravated criminal trespass, attempted aggravated criminal trespass, and criminal trespass as lesser-included offenses of attempted aggravated burglary was not "plain error."  More specifically, we hold that criminal trespass, aggravated or otherwise, and attempted aggravated criminal trespass are not lesser-included offenses of attempted aggravated burglary.  We, therefore, affirm the judgment of the trial court.

## II.  FACTS

The salient facts as set out in our original opinion are as follows:

> Jessie Maple testified that on November 13, 1997, at around 4:30 or 5:00 in the morning, she was sitting on the couch in her living room looking at a catalogue. Maple testified that she was up late because the medication she was taking inhibited her from sleeping.  There was a light on in the living room, and the television was on. Maple testified that she "heard these legs going around the edge of [her] house right by the window."  Maple testified that she first thought the noise was a squirrel, but soon realized that someone was at her window.  Maple testified that it sounded like someone was "fumbling with the screen."  Maple testified that she opened the blinds slightly so that the person would see that someone was awake inside the house. When Maple opened the blinds, the noise stopped.

> Maple then turned off all the lights in her house, called her neighbor, S. Q. Williams, and asked him to look out his window and tell her if he saw anyone outside by her house. Williams told Maple that he didn't see anyone outside.  Maple testified that she then heard a noise on her porch and went to the door to check it out.  She testified that she had to wipe off the glass door because there was condensation on it.  She looked outside and to the left and saw the Defendant.  Maples said she slammed the door and went back into her living room.  She testified, "I just lost it, I didn't know what to do." About that time, her neighbor called and told Maple that a man was on her porch.  Williams then told Maple that the man walked around and got on the sidewalk.  Maple testified that she hung up the phone and went to her door.  At that time, she saw the Defendant on the sidewalk, going away from her house.  Maple testified that the Defendant would periodically turn around and look at her house.  Maple also testified that the light bulb was missing from her front porch.  However, there was a street light just down from Maple's house.  Maple

testified that the Defendant did not make any threats, and no damage was done to the house.

Later that morning, Maple talked to the police and gave them a description of the Defendant. Maple told the police that the man at her house was a black male with broad shoulders who was not short. Maple told police that the man had a light-colored hood on his head. Maple also identified the Defendant in a line-up and in court as the man that was on her porch.

S. Q. Williams testified that he lived across the street from Maple and that on November 13, 1997, Maple called him and said that someone was outside her house. Williams testified that when he first looked outside, he didn't see anyone and got off the phone with Maple. Williams testified that he looked again a few minutes later and saw a man at Maple's window. Williams testified that the man walked around to the front of Maple's house, up onto her porch, and to her front door. Williams testified that he called Maple when he saw the man walk around to the porch. As soon as Williams called, the Defendant began to leave. He testified that he did not see the man's face and could not give a description other than that it was a tall man, approximately six feet, six or seven inches tall, wearing a loose coat with a hood. Williams also testified that it looked like the man had a limp. Immediately after the incident, Williams told the police that the man was wearing a two-toned jacket. He said that it looked like it was a light color and a dark color, and the sleeves were two-toned. At trial, when shown a picture of the Defendant's jacket, Williams testified that he could not tell if that jacket was the one that he had seen on the night of the incident.

Officer John Hughes of the Memphis Police Department was working, along with his partner, Officer Anthony Morris, in Maple's neighborhood on the evening of the offense. Hughes testified that he was in that area looking for someone based on a description he had received. That description was "male black, approximately six two. Wearing plaid jacket, white multicolored, dark pants." Hughes testified that he saw the Defendant around 4:00 in the morning, and he matched that description. Hughes testified that he first saw the Defendant coming from the backyard area of a residence in the eight hundred block of Claybrook. The Defendant "walked toward the front of the house and stood right there in the front sidewalk area." The street that is located behind the house where Hughes saw the Defendant was Alaska Street, which is where Maple lived. The house where the Defendant was spotted was his mother's house. Hughes testified that he was wearing a plaid jacket. Hughes testified that he searched the Defendant, but did not find any weapons.

Officer Anthony Morris of the Memphis Police Department testified that on November 13, 1997, he and his partner, Officer Hughes, were responding to a rape call on Alaska Street. Morris testified that he and Hughes went down Claybrook,

which was one street over from Alaska. Morris testified that he saw the Defendant walking through a vacant lot next to 860 Claybrook. Morris testified that the Defendant was wearing a multi-colored jacket.

Sergeant T. D. Jackson of the Memphis Police Department was assigned to the Crime Scene Unit on the night of the offense. Jackson responded to the call at Maple's residence, 831 Alaska Avenue. Jackson testified that he was called to the scene to take some photographs of the exterior portion of a structure. Jackson also processed the front light fixture along with the light bulb for fingerprints, but was unable to obtain any usable prints. The Memphis Police Department Crime Scene Report, which was filled out by Jackson, stated that the light bulb was removed from the fixture on the front porch of Maple's residence. On that same night, Jackson also went to 860 Claybrook Street where he tagged a jacket as evidence.

Geneva Terry, the Defendant's grandmother, lives at 860 North Claybrook and testified that the Defendant was living with her on November 13, 1997. Terry testified that she went to sleep around 11:00 the night before and that the Defendant was in the house watching television. Terry testified that she got up "a little after five" in the morning and "went in the living room and Reggie was [a]sleep" on the couch.

Deina Fisher lives in the same neighborhood as Maple and testified at the Defendant's trial. Fisher testified that between 2:30 a.m. and 3:30 a.m. on November 13, 1997, she and her cousin, Ceddrena Fisher, were awakened by a man standing in the bedroom. She later identified this man as the Defendant. On the day following the incident, Fisher gave her statement to the police. In it, Fisher stated that she "was unable to see his face but [she] could see his clothing and his body size." She stated that the offender "had on a white baseball cap turned backwards and a green and white checkered like plaid, waist length coat." Fisher stated that she did not think she would be able to identify the offender again "by face." However, Fisher identified the Defendant as the offender in a line-up. Fisher also identified the Defendant's jacket as the one he wore on November 13, 1997.

Ceddrena Fisher also testified regarding the events on November 13, 1997. Fisher testified that a man entered her bedroom between 2:00 and 3:30 on that morning. Fisher testified that she got a good look at the offender because her neighbors have a bright light that shines through her window. Fisher also identified the Defendant as the man that was in her bedroom. Fisher also identified the Defendant's jacket as the one he was wearing that night.

Reginald D. Terry, *supra*.

## III. ANALYSIS

Initially, we note that the Defendant alleges the trial court erred by failing to charge attempted criminal trespass as a lesser-included offense of attempted aggravated burglary. Criminal trespass is a Class C misdemeanor. *See* Tenn. Code Ann. § 39-14-405(d). Where the primary offense is a Class C misdemeanor, the attempt to commit that Class C misdemeanor is not an offense under Tennessee law. *See* Tenn. Code Ann. § 39-12-107(a). Thus, attempted criminal trespass is a non-existent offense.

The Defendant also argues that the trial court should have instructed the jury on the lesser-included offenses of aggravated criminal trespass, attempted aggravated criminal trespass, and criminal trespass. The Defendant was indicted for attempting to commit the offense of aggravated burglary, in that he attempted to enter the habitation of the victim without the effective consent of the victim and with the intent to commit assault. Under the test adopted in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), an offense is lesser-included if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
> (1) a different mental state indicating a lesser kind of culpability; and/or
>
> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>
> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>
> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. at 466-67.

The elements of aggravated burglary include the entry by a defendant of a "habitation" without the effective consent of the owner and with the intent to commit a felony, theft or assault. Tenn. Code Ann. §§ 39-14-403(a); -402(a)(1). The entry may be by "intrusion of any part of the body "or" any object in physical contact with the body or any object controlled by remote control, electronic or otherwise." Id. § 39-14-402(b). The criminal attempt statute requires that a defendant

act with the intent to commit aggravated burglary, and his conduct must constitute a substantial step toward committing the aggravated burglary. Id. § 39-12-101(a)(3). The elements of aggravated criminal trespass require that a defendant enter or remain on "property" when a defendant knows that he does not have the property owner's effective consent to do so, and the defendant intends, knows, or is reckless about whether the defendant's presence will cause another to fear for his or her safety. Id. § 39-14-406(a). An attempted aggravated criminal trespass requires that a defendant act with the intent to commit aggravated criminal trespass, and his conduct must constitute a substantial step toward committing the aggravated criminal trespass. A person commits criminal trespass who, knowing he does not have the owner's effective consent to do so, enters or remains on "property, or a portion thereof." Id. § 39-14-405(a). The term "enter" as used in the aggravated criminal trespass and criminal trespass statutes requires the "intrusion of the entire body." Id. §§ 39-14-406(b); -405(c).

An attempted burglary requires an attempt to enter a "habitation" with "any part of the body" or an object. *See* id. §§ 39-12-101(a)(3); -14-402; -14-403. Aggravated criminal trespass and criminal trespass both require an actual entry, and it must be with "the entire body." *See* id. §§ 39-14-405; -406. Furthermore, aggravated criminal trespass also requires that the defendant intend, know or be reckless about whether his presence will cause another to fear for his or her safety. *See* id. § 39-14-406(a)(2). Thus, both aggravated criminal trespass and criminal trespass contain additional elements not required by attempted aggravated burglary; thus, Burns part (a) is not met. Furthermore, these additional elements do not establish a different mental state indicating lesser culpability than attempted aggravated burglary, and do not create a less serious risk of harm to the person or property. Therefore, Burns part (b) is not met. Aggravated criminal trespass and criminal trespass are not lesser-included offenses of attempted aggravated burglary.

The only remaining issue is whether attempted aggravated criminal trespass is a lesser-included offense of attempted aggravated burglary. Again, an attempted aggravated burglary requires an attempt to enter a "habitation" with "any part of the body" or an object with the intent to commit a felony, theft or assault. *See* id. §§ 39-12-101(a)(3); -14-402; -14-403. An attempted aggravated criminal trespass requires an attempt to enter with "the entire body" intending, knowing or being reckless about causing another to fear for safety. *See* id. §§ 39-12-101(a)(3); -14-406. Attempted aggravated criminal trespass has additional elements not required by attempted aggravated burglary; thus, Burns part (a) is not met. Furthermore, these additional elements do not create a different mental state indicating lesser culpability, and do not create a less serious risk of harm to the person or property; thus, Burns part (b) is not met.

Burns part (c) provides that an attempt is a lesser-included offense of the "offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b)." Burns, 6 S.W.3d at 467." The "offense charged" in this case is attempted aggravated burglary; there is no such offense as "attempted attempted aggravated burglary;" therefore, attempted aggravated criminal trespass does not meet the "offense charged" aspect of the test. However, if aggravated criminal trespass is a lesser-included offense of attempted aggravated burglary, then attempted aggravated criminal trespass would be a lesser-included offense of attempted aggravated burglary

under the second portion of the test. However, we have already concluded that it is not a lesser-included offense.

Although it is somewhat unclear under Burns, it would also appear that if aggravated criminal trespass is a lesser-included offense of aggravated burglary, then attempted aggravated criminal trespass would likewise be a lesser-included offense of attempted aggravated burglary. However, this Court has held that aggravated criminal trespass is not a lesser-included offense of aggravated burglary, distinguishing cases, including State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999), which held to the contrary prior to the Burns decision. State v. Townes, 56 S.W.3d 30, 39 (Tenn. Crim. App. 2000); *see also* State v. Bernard K. Johnson, No. E2000-00009-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 71, AT *24-25 (Tenn. Crim. App. Jan. 31, 2001, at Knoxville), *perm. to app. denied* (Tenn. June 25, 2001) (thoroughly analyzing this issue under Burns parts (a) and (b)). We recognize that a panel of this Court held criminal trespass to be a lesser-included offense of simple burglary. *See* State v. George Redd, No. W2000-01620-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 631, at *13-14 (Tenn. Crim. App. Aug. 9, 2001, at Jackson), *no perm. to app. sought.* Redd made no reference to Townes or Johnson. We first note, as applicable to the case at bar, Redd only addressed criminal trespass as a lesser-included offense of simple burglary, and not aggravated criminal trespass as a lesser-included offense of aggravated burglary. Regardless, to the extent of a conflict in the holdings, we will follow the published opinion of Townes. *See* Tenn. Sup. Ct. R. 4(H)(2) ("Opinions reported in the official reporter, however, shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction.")

Accordingly, we conclude aggravated criminal trespass is not a lesser-included offense of aggravated burglary. Because it is not, attempted aggravated criminal trespass is not a lesser-included offense of attempted aggravated burglary under Burns part (c).

Although unnecessary for the disposition of this appeal, we address the issue of harmless error in the event further appellate review concludes one or more of the requested offenses are lesser-included offenses which should have been charged. In that event, we would conclude, after a "thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury," that the state has not shown harmless error beyond a reasonable doubt. *See* State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002).

## CONCLUSION

We conclude aggravated criminal trespass, attempted aggravated criminal trespass and criminal trespass are not lesser-included offenses of attempted aggravated burglary. We, therefore, find no error, and certainly not plain error, in the failure to charge these offenses.

Accordingly, we AFFIRM the judgment of the trial court.


                                        _____
                                        ROBERT W. WEDEMEYER, JUDGE