IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

February 7, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| STATE OF TENNESSEE, | ) | FOR PUBLICATION |
| | ) | |
| APPELLEE, | ) | FILED: FEBRUARY 7, 2000 |
| | ) | |
| v. | ) | ROBERTSON CIRCUIT |
| | ) | |
| CHARLES DAMIEN DARDEN, | ) | HON. ROBERT W. WEDEMEYER |
| | ) | |
| APPELLANT. | ) | NO. M1996-00044-SC-R11-CD |

For the Appellant

Jerome M. Converse
Springfield, Tennessee

For the Appellee

Paul G. Summers
Attorney General & Reporter

Michael E. Moore
Solicitor General

Daryl J. Brand
Associate Solicitor General

# OPINION

AFFIRMED                                                                BARKER, J.

**INTRODUCTION**

We granted this appeal to decide (1) whether the circuit court had jurisdiction over criminal charges that were not addressed in juvenile court during the transfer hearing; and (2) whether the amendment to Tennessee Code Annotated section 37-1-159(d) (Supp. 1999), generally eliminating the requirement for an acceptance hearing, is unconstitutional. After examining the record and considering the arguments of the parties and applicable law, we conclude that the circuit court properly exercised jurisdiction over the criminal charges transferred from juvenile court as well as over the additional charges found in the grand jury's indictment. In addition, we conclude that the General Assembly did not act unconstitutionally in eliminating the requirement for an acceptance hearing. Accordingly, for the reasons herein, we affirm the Court of Criminal Appeals.

## BACKGROUND

Charles Damien Darden, the defendant, drove a vehicle from which a passenger shot and killed Michael Westerman on January 14, 1995. The defendant, who was seventeen years old at the time of the shooting, was charged in juvenile court with first degree murder under Tennessee Code Annotated section 39-13-202 (1991 & Supp. 1996). At a transfer hearing, the juvenile court found reasonable grounds to believe that the defendant committed the delinquent act of first degree murder in violation of section -202, that the defendant was not committable to a mental institution, and that the community's best interests required placing the defendant under legal restraint. Consequently, the juvenile court transferred the defendant to the sheriff of Robertson County to be tried as an adult.

Following the transfer, a grand jury indicted the defendant on two counts of first degree murder: premeditated murder under section -202(a)(1) and felony murder under section -202(a)(2). Further, the grand jury indicted the defendant for civil rights intimidation and attempted aggravated kidnapping. The defendant filed a motion to dismiss the counts of first degree felony murder, attempted aggravated kidnapping, and civil rights intimidation arguing that the circuit court lacked jurisdiction over charges not addressed in the transfer hearing. In addition, the defendant filed another

2

motion to dismiss all counts of the indictment contending that he was deprived of rights under article I, section 8 of the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution because the circuit court did not hold an acceptance hearing. Prior to trial in the Robertson County Circuit Court, the State moved to enter a *nolle prosequi* on the count of first degree premeditated murder. The court granted the State's motion and entered a judgment of not guilty on that charge. The court, however, denied the defendant's two motions to dismiss. Following a bench trial, the court found the defendant guilty on all three remaining counts and entered a life sentence for first degree felony murder which was to be served consecutively to a three-year sentence for civil rights intimidation and a four-year sentence for attempted aggravated kidnapping, which were to be served concurrently.

## DISCUSSION

### A. *Circuit Court's Jurisdiction*

The defendant first contends that the circuit court did not have jurisdiction over the civil rights intimidation, attempted aggravated kidnapping, and first degree felony murder charges. The defendant reaches this conclusion by relying on Tennessee Code Annotated section 37-1-134(e) (Supp. 1999) ("the transfer statute"), which provides that "[n]o child . . . shall be prosecuted for an offense previously committed unless the case has been transferred as provided in subsection (a)." Thus, the circuit court's jurisdiction over the disputed charges depends on whether the transfer from juvenile court complied with the requirements of subsection (a). See id. § 37-1-134(a).

The defendant asserts that the juvenile court could not have effectively transferred its jurisdiction over the charges of civil rights intimidation, attempted aggravated kidnapping, and felony murder because the juvenile court made no findings pursuant to subsection (a) that there were reasonable grounds to believe that the defendant committed these delinquent acts. According to the defendant, the circuit court's jurisdiction extended only to the charge addressed by the juvenile court

3

during the transfer hearing, *i.e.*, the charge of first degree premeditated murder. Consequently, when the State dismissed the charge of premeditated murder, the defendant contends that the circuit court lost jurisdiction, which then properly rested with the juvenile court.

Before a juvenile may be tried as an adult in a criminal or circuit court, a juvenile court must conduct a transfer hearing and must find, among other things, reasonable grounds to believe that "[t]he child committed the delinquent act as alleged." Tenn. Code Ann. § 37-1-134(a)(4)(A) (Supp. 1999). At the transfer hearing in this case, the juvenile court found reasonable grounds to believe that the defendant committed the alleged delinquent act, *i.e.*, first degree murder. Having thus complied with the statutory requirements,[1] the juvenile court properly transferred the defendant to the sheriff of Robertson County to be held according to law and to be tried as an adult.

Following an effective transfer, jurisdiction over the case is vested in the criminal or circuit court. See id. § 37-1-134(c). The transfer statute provides that the juvenile court's jurisdiction is terminated "with respect to any and all delinquent acts with which the child may then or <u>thereafter</u> be charged, and the child shall thereafter be dealt with as an adult as to all pending and <u>subsequent</u> criminal charges." Id. (emphasis added). The emphasized language clearly contemplates that following the transfer hearing and the termination of the juvenile court's jurisdiction, a defendant may be charged in an adult court with other criminal offenses. The State obtained a grand jury indictment charging the defendant with two counts of first degree murder and one count each of civil rights intimidation and attempted aggravated kidnapping. Both of the first degree murder counts are within the scope of the juvenile court's transfer order, and the new charges are appropriately characterized under the transfer statute as "subsequent criminal charges" within the jurisdiction of the circuit court. Accordingly, we conclude that the circuit court had jurisdiction over each of the counts

---

[1] The juvenile court also found that the Defendant was not committable to a mental institution and that community interests required that the Defendant be placed under legal restraint. Thus, the juvenile court made the findings necessary to comply with the transfer statute's requirements permitting transfer of the case to a criminal court. See Tenn. Code Ann. § 37-1-134(a)(4) (Supp. 1999).

4

of first degree murder and the counts alleging civil rights intimidation and attempted aggravated kidnapping.

Having determined that following the transfer from juvenile court, the circuit court had jurisdiction over all counts charged in the grand jury indictment, we turn our attention to the defendant's contention that the circuit court lost its jurisdiction upon dismissal of the charge of first degree premeditated murder. The transfer statute does restore the juvenile court's jurisdiction if "a child transferred pursuant to [the transfer statute] is acquitted in circuit court on the charge or charges resulting in such transfer, or if such charge or charges are dismissed in such court." Id. Accordingly, we must look to the charge or charges that resulted in the transfer to circuit court to determine whether the juvenile court's jurisdiction was restored.

The charge resulting in transfer to the circuit court was a charge of first degree murder. However, neither the juvenile court's findings at the transfer hearing nor the juvenile court's order of transfer distinguished between Tennessee Code Annotated section 39-13-202(a)(1) (1991), which proscribed premeditated murder, or section -202(a)(2), which proscribed felony murder. The charge was only that of first degree murder. As such, both counts of first degree murder in the grand jury indictment are within the scope of this charge. See, e.g., Carter v. State, 958 S.W.2d 620, 624-25 (Tenn. 1997) (holding both premeditated murder and felony murder are simply alternate means of committing the single crime of first degree murder).[2] While a judgment of not guilty was entered as to premeditated murder as a result of the *nolle prosequi*, the defendant was found guilty of felony murder--a charge that resulted in the transfer to circuit court. Acquittal or dismissal of the charges resulting in the transfer is the predicate for the restoration of the juvenile court's jurisdiction. Because that predicate was not met, the circuit court properly retained jurisdiction. Therefore, we affirm the holding of the Court of Criminal Appeals that the Robertson County Circuit Court properly exercised jurisdiction in this case.

---

[2] See also Schad v. Arizona, 501 U.S. 624, 640-41 (1991) (concluding that most first degree murder statutes retain premeditated murder and felony murder as alternative means of satisfying the mental state requirement); Strouth v. State, 999 S.W.2d 759, 768 (Tenn. 1999) (Holder, J., concurring) ("A defendant is not denied due process when charged under one theory of first degree murder but convicted under a different theory.").

**B.** *Constitutionality of Tennessee Code Annotated section 37-1-159(d)*

The defendant next attacks the constitutionality of Tennessee Code Annotated section 37-1-159(d) (1996) which generally eliminates the need for an acceptance hearing. Prior to 1994, section -159(d) provided that a "criminal court, upon motion of the child filed within ten (10) days of the juvenile court order . . . shall hold a hearing as expeditiously as possible to determine whether it will accept jurisdiction over the child." Tenn. Code Ann. § 37-1-159(d) (1991). In 1994, the General Assembly amended section -159(d) to provide for an acceptance hearing in circuit court "[i]f and only if a nonlawyer judge presides at the transfer hearing in juvenile court." Tenn. Code Ann. § 37-1-159(d) (1996). According to the defendant, this amendment deprived him of a right to immediate review of the transfer decision and constitutes a denial of due process in violation of article 1, section 8 of the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution. We disagree.

We have, in the past, recognized that some aspects of the juvenile transfer process are so fundamental that their denial may amount to constitutional violations. For example, article I, section 8 of the Tennessee Constitution guarantees to a juvenile the right to have a lawyer judge preside over the transfer hearing. See State ex rel. Anglin v. Mitchell, 575 S.W.2d 284, 289 (Tenn. 1979). In addition, we have concluded that a juvenile's right to a valid transfer order "is sufficiently fundamental to be considered a matter of due process." Sawyers v. State, 814 S.W.2d 725, 729 (Tenn. 1991). We have not, however, held that a juvenile's right to an acceptance hearing is a protected right. Indeed, the defendant has cited no authority for this proposition, and our research has uncovered no such authority.

While a statute may give rise to rights protected by article I, section 8 of the Tennessee Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the rights are not perpetual but exist only as long as the General Assembly retains the language affording the right. Compare Toussaint v. McCarthy, 801 F.2d 1080, 1092 (9th Cir. 1986) ("A state-created liberty interest exists only as long as the statute or regulation creating it remains effective. If the state

6

repeals the statute or eliminates the regulation, the liberty interest ceases to exist."). The General Assembly may enact statutes that afford such rights, but the General Assembly is also free to amend these statutes, even where the amendment eliminates the formerly protected interests.[3]

We conclude, therefore, that the General Assembly's amendment of section -159(d) did not violate article I, section 8 of the Tennessee Constitution or the Fourteenth Amendment to the United States Constitution. The amendment, once effective, extinguished any due process or law of the land interests a juvenile might have had in an acceptance hearing. Because the delinquent acts and crimes with which the defendant was charged occurred after the amendment of section -159(d), the defendant was not unconstitutionally deprived of any right he might have had to an acceptance hearing.

## CONCLUSION

We conclude that the circuit court had jurisdiction over all charges presented in the grand jury indictment: first degree premeditated murder, first degree felony murder, civil rights intimidation, and attempted aggravated kidnapping. We also conclude that the amendment of Tennessee Code Annotated section 37-1-159(d) (1996), generally eliminating acceptance hearings, does not violate article I, section 8 of the Tennessee Constitution or the Fourteenth Amendment to the United States Constitution. Accordingly, we affirm the judgments of the circuit court and the Court of Criminal Appeals.

---

[3] For example, in Mayes v. Trammell, 751 F.2d 175, 179 (6th Cir. 1984), the Sixth Circuit Court of Appeals determined that Tennessee's parole scheme created a liberty entitlement protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The court largely based its decision on Rule 1100-1-1-.06 of the Rules of Tennessee Board of Parole which provided that "each resident who is eligible for parole is a worthy candidate and thus the Board presumes that he will be released on parole when he is first eligible." Id. at 178 (quoting Tennessee Board of Parole Rule 1100-1-1-.06). The Board of Parole responded by amending the Rule to eliminate the presumption of parole release. The Sixth Circuit Court of Appeals then reexamined Tennessee's parole scheme in another case and concluded that the amendment eliminated the Rule's former constitutionally protected liberty interest. See Wright v. Trammell, 810 F.2d 589, 590-91 (6th Cir. 1987) (per curiam). A similar result is appropriate here. Like the parole release scheme, any due process interest in the acceptance hearing was extinguished with the elimination of the statutory language providing for such hearings.

_____
WILLIAM M. BARKER, JUSTICE


CONCUR:
ANDERSON, C.J.
DROWOTA, BIRCH, AND HOLDER, JJ.