# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### February 2, 2010 Session

## STATE OF TENNESSEE v. D'ANGELO BARNES and MONTERRIO WATSON

**Appeal from the Criminal Court for Shelby County**
**No. 07-05328    Chris Craft, Judge**

---

**No. W2009-00081-CCA-R3-CD  - Filed March 29, 2010**

---

Appellants, Monterrio Watson and D'Angelo Barnes, were both convicted by a Shelby County Jury of two counts of aggravated robbery. Appellants were both juveniles at the time of the offenses but were transferred to criminal court for trial as adults. Appellant Barnes was sentenced by the trial court to serve ten years for each conviction. The sentences were ordered to be served concurrently. Appellant Watson was ordered to serve eight years and six months for each conviction, to be served concurrently. Both Appellants filed timely motions for new trial. The trial court denied both motions and these appeals ensued. The appeals were consolidated by this Court. On appeal, the following issues are presented for our review: (1) whether the evidence is sufficient to support the convictions; and (2) whether the trial court properly denied Appellant Watson's request for an acceptance hearing in criminal court after the transfer from juvenile court. After a review of the record, we determine that Appellant Watson waived the issue related to the transfer from juvenile court for failing to provide an adequate record on appeal. Moreover, Appellant Watson failed to file a motion for an acceptance hearing within ten days of the transfer order as required by Tennessee Code Annotated section 37-1-159(d). Further, we determine that the evidence was sufficient to support the convictions for aggravated robbery. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed**.

JERRY L. SMITH, J., delivered the opinion of the court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Gerald S. Green, Memphis, Tennessee, for appellant, D'Angelo Barnes and Brett B. Stein, Memphis, Tennessee, for appellant, Monterrio Watson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General, and Colin Campbell, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

*Factual Background*

Appellant Watson and Appellant Barnes were high school students at Overton High School in Memphis in March of 2007.

On March 11, 2007, Steven Douglas and his girlfriend, Raven Bledsoe, went to see a movie. After leaving the movie, they drove in Mr. Douglas's 2004 Nissan Sentra to the park behind Willow Oaks School. Ms. Bledsoe was a senior at Overton High School. Mr. Douglas also attended Overton. Ms. Bledsoe's father did not like for her to spend time alone with Mr. Douglas because he disapproved of the relationship.

When Ms. Bledsoe and Mr. Douglas got to the park, they got out of the car and sat on the hood of the car. Around 9:30 p.m., a "light-skinned" black man approached them and asked what kind of car it was. The man was wearing "a black hoodie, black shorts, and some regular tennis shoes." Mr. Douglas told the man what kind of car it was and the man pulled out a gun and instructed Mr. Douglas to "come up off the keys and the car."

Mr. Douglas could see another man in his peripheral vision. The second man approached Mr. Douglas and took his hat and necklace, a long chain with a Superman emblem. The second man took a cell phone that Ms. Bledsoe was holding in her hand. Mr. Douglas and Ms. Bledsoe noticed that a third man was present. All three of the attackers were holding guns and pointing them at Mr. Douglas and Ms. Bledsoe. One of the men stood in front of the car, one of the men stood to the side of the car, and the third man was "kind of to the back." The first man had the hood of the sweatshirt pulled up, but Mr. Douglas was able to see his face. The men were standing five to six feet apart, and there was a street light next to the car.

Ms. Bledsoe recognized the first man as Appellant Watson. Appellant Watson also attended Overton High School. Mr. Douglas had also seen Appellant Watson at school but did not know his name. Appellant Watson eventually took the keys to the car, and all three of the attackers got into the car and drove away. Mr. Douglas and Ms. Bledsoe walked to a nearby house and called the police.

The next day, Mr. Douglas found out where Appellant Watson lived and went to his home to confront him about the robbery. Mr. Douglas approached the house and could see Appellant Watson in the yard with some other men. Mr. Douglas "got all the way into [Appellant Watson's] face" to make sure he was the perpetrator. Appellant Barnes was also present, but Mr. Douglas did not recognize him from the night before. The police were called to the scene, and Appellant Watson was arrested.

The cell phone that was taken during the robbery was owned by Mr. Douglas. He had purchased the cell phone before giving it to Ms. Bledsoe for her use. When Mr. Douglas received the next billing statement after the robbery, he noticed that there had been phone calls made on the phone since the robbery. Mr. Douglas did not recognize the numbers, so he turned the billing statement over to the police.

The police were able to investigate the calls made on the phone after the robbery and ascertained that one of the numbers belonged to Whit'le Williams. Ms. Williams confirmed that she received several calls from Appellant Barnes on the night of the robbery.

The police prepared a photographic lineup for Ms. Bledsoe that included a photograph of Appellant Barnes. Ms. Bledsoe reviewed the lineup on April 11, 2007, and was able to identify Appellant Barnes as one of the robbers. Ms. Bledsoe informed police that Appellant Barnes was the man who stood in front of the car near Appellant Watson and pointed a gun at her. The third robber was never identified.

The car was located on March 15, 2007, when an abandoned car was reported outside a vacant house on Marcia Road. The car was processed, but no prints were found.

Appellant Watson and Appellant Barnes presented two alibi witnesses. Donnell Grandberry testified that he lived with his brother, Charles Grandberry, at 1904 Tahiti. The night of the incident, March 11, 2007, Donnell Grandberry claimed that Appellant Watson was at his house when he got home from work at around 5:00 p.m. Appellant Barnes came over to the house later that night. The men watched an NBA game on television between the Lakers and the Mavericks that started at 8:00 p.m. on ESPN. The game lasted about two hours. Donnell Grandberry borrowed his brother's car when the game was over and drove Appellants Watson and Barnes to their homes.

Charles Grandberry testified that Appellants Watson and Barnes were at his house on the night of March 11, 2007. He saw the men watching the basketball game when he got home from a church function "between ten and ten-thirty." Charles Grandberry went to his room shortly after he got home. Donnell Grandberry asked to borrow the car to take the men home. The Grandberry house was close to Appellant Watson's house on Dorrie Street. The

State presented the rebuttal testimony of Deputy Forrest Bartlett, who testified that Charles Grandberry had informed him as part of the investigation that he arrived home between 10:30 and 11:00 p.m. on the night of March 11, 2007.

At the conclusion of the proof, the jury convicted both Appellant Watson and Appellant Barnes of two counts of aggravated robbery. The trial court sentenced Appellant Barnes to serve ten years for each conviction while Appellant Watson was ordered to serve eight years and six months for each conviction. The trial court ordered the sentences to be served concurrently.

After the denial of motions for new trial filed by both Appellant Watson and Appellant Barnes, both Appellants filed timely notices of appeal.

*Analysis*
*Denial of Acceptance Hearing for Appellant Watson*

On appeal, Appellant Watson argues that the trial court erred in refusing to grant an acceptance hearing after he was transferred from juvenile court to be tried as an adult in the criminal court. The State disagrees, contending that an acceptance hearing is not appropriate unless a non-lawyer judge presided at the transfer hearing in juvenile court. The State also argues that Appellant Watson has waived the issue for failure to prepare an adequate appellate record for review.

A juvenile court may transfer a child under age sixteen to the criminal court to be dealt with as an adult if the child is alleged delinquent and charged with one of several listed crimes including aggravated robbery, Tennessee Code Annotated section 37-1-134(a)(1), and if the court finds that reasonable grounds exist to believe that:

(A) The child committed the delinquent act as alleged;

(B) The child is not committable to an institution for the mentally retarded or the mentally ill; and

(C) The interests of the community require that the child be put under legal restraint or discipline.

T.C.A. § 37-1-134(a)(4). Once the juvenile court rules that the juvenile will be transferred for trial as an adult, our statutes state the following:

> There is no civil or interlocutory appeal from a juvenile court's disposition pursuant to § 37-1-134. If and only if a nonlawyer judge presides at the transfer hearing in juvenile court, then the criminal court, upon motion of the child filed with in ten (10) days of the juvenile court order, excluding nonjudicial days, shall hold a hearing as expeditiously as possible to determine whether it will accept jurisdiction over the child; provided, that if no such motion is filed with the criminal court within the ten-day period, excluding nonjudicial days, such child shall be subject to indictment, presentment or information for the offense charged . . . .

T.C.A. § 37-1-159(d). Our supreme court has held that the part of section 37-1-159(d) that eliminates the right to an acceptance hearing except in cases in which the transfer was by a nonlawyer judge does not violate due process. *State v. Darden*, 12 S.W.3d 455, 459-60 (Tenn. 2000).

In *State v. Griffin*, 914 S.W.2d 564 (Tenn. Crim. App. 1995), this Court addressed appellate review of juvenile transfer orders. In *Griffin*, the defendant pled guilty after a transfer from juvenile court. *Id.* at 565. On appeal, the defendant argued that the juvenile court improperly transferred him out of juvenile court. This Court examined Tennessee Code Annotated section 37-1-159(d), quoted above, and emphasized that when the transfer is made by a nonlawyer judge, the juvenile may request an acceptance hearing by motion filed within ten days of the transfer order. *Id.* at 566. This Court noted that the statute "does not specifically address the manner in which an appeal is taken from an order of a lawyer juvenile judge transferring a juvenile to be tried as an adult." *Id.* The court ultimately determined:

> [I]n order to review the decision of the lawyer juvenile judge, the juvenile in criminal court must either (1) enter a plea of not guilty and thus preserve the issue for review, if convicted, or (2) reserve the issue on a plea of guilty or nolo contendere pursuant to Rule 37(b)(2)(i) or (b)(2)(iv) of the Tennessee Rules of Criminal Procedure. The second alternative assumes that the decision of whether the juvenile should be tried as an adult is a "certified question of law" that may be appealed pursuant to Rule 37. *See State v. Kevin L. Moton*, No. 03C01-9104-CR-00129, Hamilton County, 1992 WL 19270 (Tenn. Crim. App., Knoxville, filed Feb. 6), *perm. to appeal denied*, (Tenn., June 22, 1992).

*Id.* In *Griffin*, this Court looked at the record and was unable to ascertain whether the judge was a lawyer or nonlawyer. *Id.* Further, it was apparent that the defendant in *Griffin* pled guilty without reserving a certified question of law pursuant to Rule 37 of the Tennessee Rules of Criminal

Procedure. The defendant was deemed to have waived appellate review of the juvenile transfer. *Id.* at 567.

Looking at the appellate record that is before this Court in the case herein, it is not apparent whether the juvenile judge who authorized the transfer of Appellant Watson from juvenile court to criminal court was a lawyer or nonlawyer.

In any event, Appellant Watson's issue is without merit. Appellant Watson failed to file a motion for acceptance hearing within ten days of the transfer order as required by Tennessee Code Annotated section 37-1-159(d). Appellant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Appellants Watson and Barnes challenge the sufficiency of the evidence on appeal. Specifically, Appellant Watson argues that "the testimony of his two alibi witnesses [was] sufficient to create a reasonable doubt in the minds of the jury." Appellant Barnes, on the other hand, argues that all of the evidence against him is circumstantial and that he was only identified by Ms. Bledsoe as a perpetrator because he was with Appellant Watson "some time after the robbery took place." The State disagrees, insisting the evidence was sufficient to support the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Appellants herein were convicted of aggravated robbery. Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). A robbery becomes aggravated either when the victim is seriously injured

or when the defendant "display[s] . . . any article used . . . to lead the victim to reasonable believe it to be a deadly weapon." T.C.A. § 39-13-402(a).

*Appellant Barnes*

Appellant Barnes suggests that the evidence supporting his identity was insufficient. It has long been recognized that circumstantial evidence may be used exclusively to establish guilt. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). "The weight of the circumstantial evidence is for the jury to determine." *Williams v. State*, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974). Further, "[a] conviction may be based entirely on circumstantial evidence when the facts are 'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone.'" *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985)). If the trier of fact can determine from the proof that all other reasonable theories except that of guilt are excluded, the evidence is sufficient.

The proof at trial revealed that Ms. Bledsoe was able to identify Appellant Barnes in a photographic lineup as one of the robbers. She identified Appellant Barnes as the man who stood in the front of the car and pointed a gun at her and Mr. Douglas. Ms. Bledsoe testified at trial that she was able to see Appellant Barnes's face because the area was well-lit and the sweatshirt worn by Appellant Barnes did not completely cover his face. Further, there was testimony that Appellant Barnes was in possession of the cell phone taken during the robbery and that Appellant Barnes made several calls to Whit'le Williams within a few minutes after the telephone was stolen. After a review of the evidence, we conclude that the evidence was sufficient to support Appellant Barnes's conviction.

*Appellant Watson*

Appellant Watson's challenge to the evidence can be summarized as a challenge the jury's credibility determinations. The jury heard the testimony of the alibi witnesses and obviously discredited that testimony, instead relying on the eyewitness identification of the victims that placed Appellant Watson at the scene of the robbery with a gun. Ms. Bledsoe and Mr. Douglas identified Appellant Watson as one of the robbers involved on the evening of the incident. Again, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *Odom*, 928 S.W.2d at 23. Appellant Watson is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE

-7-