# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 15, 2014

## CHARLES DAMIEN DARDEN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Robertson County**
**No.  74CC-1995-CR937 (9676A)   John H. Gasaway, III, Judge**

---

**No.  M2013-01328-CCA-R3-PC - Filed March 13, 2014**

---

The Petitioner, Charles Damien Darden, appeals the Robertson County Circuit Court's denial of his "Petition for Writ of Habeas Corpus in Alternative Petition for Post-Conviction Relief in Alternative Petition[] for Writ of Error Coram Nobis" requesting relief from his 1996 conviction for felony murder and his resulting life sentence.  The Petitioner contends that his life sentence violates the Eighth Amendment to the United States Constitution as discussed in *Miller v. Alabama*, 567 U.S. —, 132 S.Ct. 2455 (2012).  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Charles Damien Darden.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and B. Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

According to this court's opinion in the appeal of the Petitioner's convictions, the evidence at the trial showed that:

> On January 14, 1995, Michael and Hannah Westerman were traveling from their home in Kentucky to Springfield, Tennessee, to do some shopping and have dinner.  From the back of the Westermans' Chevrolet pick-up truck flew a Confederate battle flag, which was attached to a pole mounted on the

truck's tool box. On their way to Springfield, the Westermans stopped at Janie's Market in Guthrie, Kentucky, to get some gas. Mr. Westerman paid for the gas, and while he and Mrs. Westerman sat in the truck talking, Mrs. Westerman noticed a black man in a dark blue car pointing at them.

Mr. Westerman pulled the truck onto the road, and as they crossed into Tennessee, Mrs. Westerman noticed two (2) cars, one light blue and the other dark blue, following them. Mr. Westerman passed a car in front of them, and both blue cars were able to catch up with the Westermans. Although the Westermans' truck was traveling at approximately 85 miles per hour, the light blue car began to pass them on the left. Mr. Westerman pushed Mrs. Westerman on the floorboard of the truck as the car passed them. After the car passed, Mrs. Westerman sat up in her seat, and Mr. Westerman told her that he had been shot.

Mrs. Westerman climbed over to the driver's side so that she could drive the truck. Suddenly, the light blue car came to a complete stop in the middle of the road in front of the Westermans' truck, and Mrs. Westerman saw a black man sitting in the car pointing a gun at the truck. The dark blue car which had been following the Westermans completely stopped behind the Westerman vehicle, and Mrs. Westerman was forced to drive through a ditch, across an embankment and into a parking lot in an attempt to flee the scene. However, because the two cars had blocked her access to the paved driveways into the parking lot, Mrs. Westerman had to cross another ditch in order to exit the parking lot. Mrs. Westerman then proceeded in the opposite direction, towards Guthrie, in an effort to seek medical attention for her husband and avoid further confrontation with the individuals in the blue cars.

Mr. Westerman died the next day at Vanderbilt Hospital as a result of a gunshot wound to the heart.

Shortly after the incident, the police developed appellant Darden as a suspect in the shooting. While law enforcement authorities were conducting an interview with Darden concerning the incident, appellant Morrow appeared at the police station and confessed to the shooting. In his statement to the police, Morrow acknowledged that he was a passenger in Darden's car when he shot several times at the Westermans' truck. He stated that they chased the Westermans after someone in the truck shook the Confederate flag at them and shouted a racial epithet.

At the time the incident occurred, both Morrow and Darden were seventeen (17) years of age. Tony Andrews and Marcus Merriweather, other passengers in Darden's car during the incident, were also juveniles. Andrews was seventeen (17) years of age, and Merriweather was fifteen (15) years of age. All four were charged in juvenile court with the delinquent act of premeditated first degree murder, and upon a transfer hearing in that court, were transferred to the Robertson County Circuit Court to be tried as adults.

Subsequently, Darden, Morrow, Andrews and Merriweather were each indicted on one (1) count of civil rights intimidation, one (1) count of premeditated first degree murder, one (1) count of felony murder and one (1) count of attempted aggravated kidnapping. Andrews entered into a plea agreement with the state wherein he pled guilty to criminally negligent homicide and was placed on diversion for two (2) years. Merriweather was tried on the instant offenses in a joint trial with Morrow and Darden.

At trial, Andrews testified for the state. Andrews stated that on the afternoon of the incident, he and Darden were driving around Guthrie in Darden's light blue car. Merriweather and Morrow eventually joined them, and they went to a friend's house so that Darden could collect some money owed to him. While they were sitting in the car, they noticed a red pick-up with a Confederate flag on its toolbox driving by. Subsequently, they saw the pick-up truck parked at Janie's. Darden remarked that he wanted to fight the people in the truck and drove to a local hangout to inform others that he intended to fight the occupants of the truck. The group went back to Janie's, and the truck was still in the parking lot. The truck then began to pull out of the parking lot, and when the truck was beside Darden's car, Morrow rolled his window down and began pointing at the flag. Andrews testified that he then saw someone reach out of the truck's back window and shake the Confederate flag.

Darden's car then pulled out of Janie's parking lot and alongside a car containing Robert Bell, Ricky Williams and Michael Mimms. Octavius Burks and Marcus Darden were in another car behind Bell's. When the Westerman truck began to exit Janie's, Appellant Darden remarked, "there it goes." Bell and Burks began to follow the truck, and the Darden car turned around and followed as well. The Darden car was approximately four (4) cars behind the Westerman truck, and Morrow told Darden to "catch" Bell. At this point, Morrow informed the other occupants of the car that he was armed.

-3-

The Darden car caught up with Burks and Bell and eventually passed both cars, putting them directly behind the Westerman truck. Darden's car was traveling approximately 70 to 80 miles per hour, and the truck began to speed up in front of them. Darden began to speed up, and Andrews heard shots fired from the back seat on the driver's side, where Morrow was sitting. Andrews turned around and saw Morrow leaning out of the window firing his gun. Bell was following the Darden car approximately three (3) to four (4) car lengths behind.

Because Morrow's gun jammed, he began fumbling with the weapon. Morrow then told Darden to pass the Westerman truck, and as they started to pass the truck on the left side, Andrews heard another shot fired from the same direction. When the car pulled alongside the Westerman truck, Andrews heard another shot fired from the back passenger seat. After they passed the truck, Andrews noticed that the truck slowed down. Darden began to slow down and then stopped his vehicle in the middle of the road. The truck stopped behind them, and Morrow leaned out of his window, pointed his gun at the truck and exclaimed, "[I've] got them now." The truck veered off into a ditch, and Morrow continued to fire his gun. Eventually, the truck was able to maneuver through the ditch, out of the parking lot and back onto the road proceeding in the opposite direction.

Morrow testified on his own behalf at trial. He stated that on the day of the incident, he was carrying a gun for protection because his life had been threatened. He testified that they followed the Westerman truck because all of the occupants in the car were "looking for a fight." Although he acknowledged that they wanted to fight because someone in the truck waved the Confederate flag, he insisted that he did not shoot at the truck because of the flag. Instead, he testified that as Darden began to pass the Westerman truck, Darden, Merriweather and Andrews started yelling, "shoot!" Because of the "pressure" from the others in the car, he started firing his gun into the air. He stated that he never told Darden to stop his car in the road and did not point his gun at the truck when the car was stopped. He further testified that he never intended to harm anyone during the incident.

Appellant Darden also testified for the defense at trial. He claimed that no one in the car discussed fighting with the occupants of the truck. He was offended when someone in the truck shook the flag, but had no intention of shooting anyone. He was chasing the truck to "mess" with its occupants and did not know that Morrow was armed. He denied that anyone in the car

-4-

coerced Morrow into shooting his weapon. When he heard the gunshots, he assumed that the truck was merely "backfiring." He further denied stopping in the roadway or attempting to "box in" the Westermans' truck.

*State v. Freddie Morrow and Damien Darden*, No. 01C01-9612-CC-00512, slip op. at 3-7 (Tenn. Crim. App. Dec. 22, 1998), *aff'd*, 12 S.W.3d 455 (Tenn. 2000).

Based on this evidence, the trial court found the Petitioner guilty of first degree murder in the perpetration of an attempted aggravated kidnapping, attempted aggravated kidnapping, and civil rights intimidation. He was sentenced to life imprisonment for the first degree murder conviction, four years for the attempted aggravated kidnapping conviction, and three years for the civil rights intimidation conviction. The three- and four-year sentences were ordered to run concurrently with each other but consecutively to the life sentence. This court affirmed the convictions, and the Tennessee Supreme Court affirmed this court's decision. *State v. Darden*, 12 S.W.3d 455 (Tenn. 2000); *Freddie Morrow and Damien Darden*, slip op. at 3. In the current appeal, the Petitioner does not address his attempted aggravated kidnapping and civil rights intimidation convictions or the sentences for those convictions.

On February 5, 2001, the Petitioner filed a *pro se* "Petition for Writ of Habeas Corpus or in the Alternative For Post-Conviction Relief" in Lake County Circuit Court. The court denied the habeas corpus petition and determined that it did not have jurisdiction to address the post-conviction issues arising from the Petitioner's Robertson County convictions. *State v. Charles Damien Darden*, No. W2001-01833-CCA-R3-CD (Tenn. Crim. App. Feb. 12, 2002). This court agreed with the trial court's determination that it did not have jurisdiction concerning the post-conviction issues but reversed and remanded the case for the determination of indigency and the appointment of counsel regarding the Petitioner's challenge to the validity of the indictment. *Id.*

On December 30, 2004, the Petitioner filed a petition for habeas corpus relief in Lake County Circuit Court. He argued that his judgments were void due to a defective indictment and that he was denied due process in juvenile court. He also argued the felony murder judgment was facially invalid because the life sentence imposed by the trial court was contrary to the 1989 Sentencing Act and because the judgment showed that he was a Range I offender subject to 30% service. The court found that no defect rendering the indictment void existed and that the juvenile court transfer order was proper. The court noted that although the other judgments were proper, the felony murder judgment form showed that the Petitioner was sentenced to life imprisonment but that the "block for 'standard 30% Range I'" was marked. The court conducted a hearing to determine if the Robertson County Circuit Court had amended the judgment to reflect 100% service. The State filed a motion to

dismiss, arguing that the issue had been adjudicated previously and that the Petitioner failed to provide documentation as to the outcome of that proceeding. The court denied habeas corpus relief. The hearing transcript was not included in the appellate record, and this court presumed that the trial court properly ruled on the petition. *Charles Damien Darden v. Tony Parker, Warden*, No. W2005-00982-CCA-R3-HC (Tenn. Crim. App. Nov. 30, 2005) (mem.), *perm. app. denied* (Tenn. Apr. 24, 2006).

On February 11, 2013, the Petitioner, proceeding *pro se*, filed the current petition, which was titled "Petition for Writ of Habeas Corpus in Alternative Petition for Post-Conviction Relief in Alternative Petition[] for Writ of Error Coram Nobis," and asserted that he was entitled to relief pursuant to the statutes governing post-conviction, habeas corpus, and coram nobis. He contended that he was being illegally restrained and that his sentence was cruel and unusual and violated the United States and Tennessee Constitutions pursuant to *Miller*, 567 U.S. —, 132 S. Ct. 2455. He also contended that he received the ineffective assistance of counsel and that *Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309 (2012), allowed him to establish cause for his "procedural default" to allow the court to hear the issue.

Following the appointment of counsel, the Petitioner filed an "Initial Brief" in the trial court in support of his petition. Although the Petitioner conceded that nothing in the petition indicated any newly discovered facts required coram nobis consideration and that the coram nobis claim should be stricken, he did not state whether he wanted to proceed with his petition as one for post-conviction relief or one for habeas corpus relief. He conceded that *Martin* did not offer habeas corpus relief in Tennessee but in federal claims. He argued that in *Miller*, the United States Supreme Court insisted trial courts have options when sentencing a juvenile for a first degree murder conviction and that in his case, the trial court was required to sentence him to life imprisonment because the State did not seek life without parole. In his conclusion, he did not specifically request post-conviction or habeas corpus relief but states that in this case, "Tennessee's mandated life imprisonment with the possibility of parole" is unconstitutional because the court did not have the option to impose a lesser sentence.

The Petitioner was not present when the trial court ruled on the petition. Counsel conceded the petition concerned a question of law. In its oral findings, the court noted that a juvenile's sentence would violate the Eighth Amendment if the juvenile was subjected to a situation where only the maximum sentence could be imposed and where the court had no discretion to order a sentence below the maximum. The court determined that because the Petitioner was not exposed to a life sentence without the possibility of parole or death, his life sentence was less than he could have received and was not a constitutional infringement. The court denied the petition.

When counsel asked the trial court for clarification regarding its position on whether it had the authority to order a sentence below the mandatory minimum when the defendant was a juvenile, the court stated that after the Petitioner was transferred from juvenile court, tried, and convicted of first degree felony murder, three sentences were possible by law: death, life without the possibility of parole, and life imprisonment. The court determined that because the State did not seek the death penalty or life without parole, the Petitioner was subjected to and received the least severe sentence for his conviction. The court stated that it had no discretion by law to impose anything other than a life sentence.

The trial court's written order denying relief was titled "Order Denying Petition for Writ of Habeas Corpus, for Post-Conviction Relief and for Writ of Error Coram Nobis." The court found that the Petitioner sought relief based on *Miller*, which stood for the proposition that a juvenile who was transferred to adult court and tried for first degree murder could not face a sentence of life without parole. The court noted that the Petitioner did not face a possible sentence of life without the possibility of parole but was sentenced to "life with [the] possibility of parole" and determined that *Miller* was not pertinent to this case. This appeal followed.

In his appellate brief, the Petitioner states only that this appeal addresses a question of law. He does not state if he is proceeding under one type of petition or under all the alternatives he listed in his original petition. He notes in his brief that the trial court's May 24, 2013 order denied his "petition for post-conviction relief."

The Petitioner asserts that Tennessee's mandatory minimum sentencing structure for juveniles tried as adults and convicted of first degree murder violates the Eighth Amendment to the United States Constitution, citing *Miller*. He argues that *Miller* requires that a trial court have options other than a mandatory life sentence without parole when sentencing a juvenile for first degree murder and that the court must have the opportunity to consider mitigating factors before imposing the harshest possible sentence. He argues that a life sentence was the only sentence the trial court could apply and that he should have been allowed to have a sentencing hearing to show which mitigating factors apply to his conviction. The State responds that the appeal is not properly before this court because the Petitioner abandoned his coram nobis claim in the trial court, he never argued his judgments were void for habeas corpus relief, he filed the petition in the wrong trial court for habeas corpus relief, his post-conviction claim is time-barred, and he failed to comply with the requirements to appeal a denial of a motion to reopen his petition for post-conviction relief. In the alternative, the State asserts that the Petitioner's sentence does not violate *Miller*. We agree with the State that the Petitioner's sentence does not violate *Miller*.

Regarding the State's argument that the Petitioner's appeal is not properly before this court as one for coram nobis relief, we note the Petitioner conceded in his "Initial Brief" filed in the trial court that nothing in the petition indicated any newly discovered facts requiring coram nobis consideration and struck the coram nobis claim. The petition does not allege proper grounds for coram nobis relief, and we will not consider the petition as one for coram nobis relief.

Regarding the State's argument that the Petitioner's appeal is not properly before this court as one for habeas corpus relief, we note that the Petitioner argued in his original petition that his judgment was void. Regarding the location of the petition's filing, Tennessee Code Annotated section 29-21-105 (2012) states that an application for habeas corpus relief should be filed with "the court or judge most convenient in point of distance to the applicant, unless a sufficient reason be given in the petition for not applying to such court or judge." Although the Petitioner is incarcerated in Lake County and filed his petition in Robertson County, the trial court did not dismiss the petition on procedural grounds, and we will not rely on this deficiency in determining whether the trial court erred in denying the petition. *See Brian Roberson v. Howard Carlton, Warden*, No. E2006-01551-CCA-R3-HC, slip op. at 4 (Tenn. Crim. App. July 12, 2007) (unless a trial court dismisses a petition for habeas corpus due to noncompliance with procedural requirements, an appellate court should not rely on procedural deficiencies to defeat an appeal), *perm. app. denied* (Tenn. Nov. 19, 2007).

In Tennessee, habeas corpus relief is available only when it appears on the face of the judgment or the record that the trial court was without jurisdiction to convict or sentence the defendant or that the sentence has expired. *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). The purpose of the habeas corpus petition is to contest a void, not merely a voidable, judgment. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999); *State ex rel. Newsom v. Henderson*, 424 S.W.2d 186, 189 (Tenn. 1968). A void, as opposed to a voidable, judgment is "one that is facially invalid because the court did not have the statutory authority to render such judgment." *Summers v. State*, 212 S.W.3d 251, 256 (Tenn. 2007). A voidable judgment "is one that is facially valid and requires proof beyond the face of the record or judgment to establish its invalidity." *Id.* The burden is on the petitioner to establish that the judgment is void or that the sentence has expired. *State ex rel. Kuntz v. Bomar*, 381 S.W.2d 290, 291-92 (Tenn. 1964).

An illegal sentence results in a void judgment and is a cognizable claim for habeas corpus relief. *See Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000). An illegal sentence is a "jurisdictional defect," and the petitioner must show that the "jurisdictional defect appears in the record of the original trial, thereby creating a void judgment." *Luther E. Fowler v. Howard Carlton, Warden*, No. E2004-01346-CCA-R3-HC, slip op. at 4 (Tenn.

-8-

Crim. App. Mar. 21, 2005), *perm. app. denied* (Tenn. June 27, 2005). The petitioner must show, based on the record of the trial, that the trial court lacked jurisdiction to sentence him. *See Stephenson*, 28 S.W.3d 910; *see also Luther E. Fowler*, slip op. at 4.

We note that Tennessee Code Annotated section 29-21-107(b)(4) (2012) requires a petitioner to attach to his habeas corpus petition copies of his previous habeas corpus petitions and the proceedings thereon. The Petitioner attached this court's decisions in his previous cases to his "Initial Brief" filed in the trial court but failed to include his previous habeas corpus petitions or the proceedings on those petitions. However, the record does not show that the State moved to dismiss the petition for failure to comply with the requirement, and the trial court denied relief without addressing the procedural deficiency. Our supreme court has concluded that dismissal is not required for failure to comply with section 29-21-107 and that a trial court may choose to adjudicate the petition on its merits. *Hickman v. State*, 153 S.W.3d 16, 21 (Tenn. 2004). We conclude that the court properly adjudicated the petition for relief on the merits.

The Petitioner contends that his sentence is unconstitutional pursuant to *Miller*. Life imprisonment is a statutorily authorized punishment for the Petitioner's felony murder conviction, and the trial court was statutorily empowered to impose the life sentence pursuant to Tennessee Code Annotated section 39-13-202(c) (2010). "[T]he writ of *habeas corpus* is not, *per se*, a vehicle for enforcing constitutional rights." *Luther E. Fowler*, slip op. at 5; *see Summers*, 212 S.W.3d at 261 (contrasting post-conviction proceedings, which "may challenge a conviction or sentence that is alleged to be void or voidable because of the abridgement of constitutional rights," to habeas corpus procedures, which are for the narrow purpose of challenging a void judgment). His claim of an unconstitutional sentence renders the judgment voidable, not void, and is not cognizable in a habeas corpus petition. We conclude that the Petitioner is not entitled to habeas corpus relief.

Regarding the State's argument that the Petitioner's appeal is not properly before this court as one for post-conviction relief, post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012). The Post-Conviction Procedure Act allows for only one petition attacking a single judgment, which must be filed within one year of the final action by the highest state appellate court to which an appeal is made or, if no appeal is taken, within one year of the trial court's judgment becoming final. T.C.A. § 40-30-102(a), (c) (2012). If a previous petition is resolved on the merits by a court of competent jurisdiction, a "subsequent petition shall be summarily dismissed." *Id.* at § 40-30-102(c).

The State argues that if the original petition was a motion to reopen the Petitioner's previous post-conviction petition, the appeal is not properly before this court because the Petitioner did not file an application seeking permission to appeal as required by Tennessee Code Annotated section 40-30-117(c) (2012). The Petitioner previously filed a *pro se* petition captioned "Petition for Writ of Habeas Corpus or in the Alternative For Post-Conviction Relief" in Lake County Circuit Court. Although the court denied the habeas corpus petition, it determined that it did not have jurisdiction to address the post-conviction issues arising from the Petitioner's Robertson County convictions, and this court agreed. *Charles Damien Darden*, slip op. at 1. The previous post-conviction petition was not resolved on the merits by a court of competent jurisdiction, and the Petitioner is not barred from seeking post-conviction relief.

Regarding the State's argument that a post-conviction petition is time-barred, the Petitioner's convictions became final on February 7, 2000, and the current petition was filed over thirteen years later on February 11, 2013. On its face, the petition is barred by the post-conviction statute of limitations and contains no allegation why it is not time-barred. Counsel was appointed to represent the Petitioner, but still no argument was made as to why the petition is not time-barred as a post-conviction claim.

Tennessee Code Annotated Section 40-30-102(a) (2012) provides that a person must petition for post-conviction relief within one year of the date on which the judgment became final to prevent consideration of the petition being time-barred. The statute emphasizes that "[t]ime is of the essence of the right to file a petition for post-conviction relief . . . , and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise." *Id.* A petition filed after the limitations period expires shall not be considered unless one of three exceptions applies. *See* T.C.A. § 40-30-102(b)(1)-(3). The only relevant exception provides that

> (1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial[.]

*Id.* at § 40-30-102(b)(1). The Petitioner's claim is based on the United States Supreme Court's decision in *Miller*, establishing that a mandatory life sentence without parole is

unconstitutional for defendants who were juveniles at the time of the offense. The petition was filed within one year of the Court's decision.

The United States Supreme Court has not addressed the retroactive application of *Miller*. The Tennessee Supreme Court recently concluded that the retroactivity of new constitutional rules in post-conviction proceedings should be determined using Tennessee Code Annotated section 40-30-122 (2012). *Derrick Brandon Bush v. State*, — S.W.3d —, —, No. M2011-02133-SC-R11-PC, slip op. at 16 (Tenn. Jan. 28, 2014). That section states that

> a new rule of constitutional criminal law is announced if the result is not dictated by precedent existing at the time the petitioner's conviction became final and application of the rule was susceptible to debate among reasonable minds. A new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or requires the observance of fairness safeguards that are implicit in the concept of ordered liberty.

T.C.A. § 40-30-122. The court noted in *Bush* that state courts are "not 'bound by federal retroactivity analysis when a new federal rule is involved.'" *Bush*, slip op. at 12 n.6. Whether *Miller* requires retroactive application is a question of law, which we review de novo with no presumption of correctness. *State v. White*, 362 S.W.3d 559, 565 (Tenn. 2012). We must determine first whether *Miller* announced a "new rule." *Bush*, slip op. at 16. If *Miller* announced a new rule, we must then determine if the rule requires retroactive application. *Id.*

Tennessee Code Annotated section 40-30-122 states that "a new rule of constitutional criminal law is announced if the result is not dictated by precedent existing at the time the petitioner's conviction became final and application of the rule was susceptible to debate among reasonable minds." Although the majority in *Miller* held that mandatory life imprisonment without parole for juvenile offenders is unconstitutional, one justice filed a concurring opinion, and three justices filed dissenting opinions. *Miller*, 567 U.S. —, 132 S. Ct. 2455 (Breyer, J., concurring), (Roberts, J., dissenting), (Thomas, J., dissenting), (Alito, J., dissenting). Further, Justice Scalia joined each of the dissenting opinions, although he did not write separately. The fact that *Miller* resulted in a split panel and that the majority's decisions reversed two state appellate courts' decisions shows that the ruling was not dictated

by precedent. Also, the Court's separate opinions show that the ruling was susceptible to debate among reasonable minds. We conclude that *Miller* announced a new rule of constitutional criminal law and was not dictated by precedent.

Tennessee Code Annotated section 40-30-122 states that a new rule of constitutional criminal law can be applied retroactively only if "the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or if the new rule "requires the observance of fairness safeguards that are implicit in the concept of ordered liberty." The retroactivity standard of Code section 40-30-122 is similar to the federal standard of *Teague v. Lane*, 489 U.S. 288 (1989). *Bush*, slip op. at 19. In *Teague*, the Supreme Court stated that a new rule of federal constitutional law is to be applied in cases on collateral review if it (1) "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or (2) requires the observance of procedures implicit in the concept of ordered liberty. *Teague,* 489 U.S. at 307 (internal quotations omitted). Our supreme court concluded that the statutory "fairness safeguards" are the equivalent of the *Teague* standard's "watershed rules of criminal procedure" or "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Bush*, slip op. at 21 (citing *Teague*, 489 U.S. at 313). We note that the language in section 40-30-122 and *Teague* concerning new rules that place conduct beyond the power of the criminal law-making authority is identical, and we use them as guides in determining whether *Miller* should be applied retroactively as a rule placing conduct beyond the power of the state to proscribe.

In *Van Tran v. State*, 66 S.W.3d 790, 811 (Tenn. 2001), our supreme court determined that its holding prohibiting the execution of intellectually disabled defendants should be applied retroactively because it "materially enhance[d] the integrity and reliability of the fact finding process of the trial." (citing the *Teague* federal standard for retroactivity). The *Van Tran* holding is instructive because like *Miller*, it concerns prohibiting a category of punishment for a class of defendants. In *Van Tran*, the court quoted the United States Supreme court, stating, "'[T]he first exception set forth in *Teague* should be understood to cover not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Van Tran*, 66 S.W.3d at 811 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)). We conclude that the *Miller* rule is a new rule of constitutional criminal law that should be applied retroactively because it forbids the criminal punishment of a mandatory sentence of life imprisonment without parole for a certain class of defendants because of their status as juveniles. We review the petition as one for post-conviction relief.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). The question of whether the Petitioner's sentence is unconstitutional is a question of law, which we review de novo. *Fields v. State*, 40 S.W.3d 450,457-58 (Tenn. 2001).

Unlike the Arkansas and Alabama statutes discussed in *Miller* that only allowed for sentences of death or life imprisonment without parole for first degree murder, Tennessee defendants convicted of first degree murder may be sentenced to death, life imprisonment without the possibility of parole, or life imprisonment. T.C.A. § 39-13-202(c) (2010). A defendant transferred from juvenile court before being convicted may not be sentenced to death. T.C.A. § 37-1-134(a)(1) (Supp. 2013). Life imprisonment in Tennessee does not condemn a juvenile offender to die in prison as the life-without-parole sentences contemplated by *Miller*. In Tennessee, a defendant sentenced to life imprisonment must serve 85% of sixty years, or fifty-one years, before becoming eligible for release. T.C.A. § 40-35-501(i)(1) (2010); *see also Vaughn v. State*, 202 S.W.3d 106 (Tenn. 2006); Tenn. Op. Att'y Gen., No. 97-098 (1997). *Miller* addressed the need for discretion in imposing a sentence of life without the possibility of parole. *Miller*, 567 U.S. —, 132 S. Ct. at 2460. Because the Petitioner received a life sentence with release eligibility after fifty-one years' imprisonment, we conclude that the Petitioner is not entitled to post-conviction relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE

-13-